**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MALCOLM BRUCE WESTCOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-0293 (JR)** |
| | ) | |
| **THE HONORABLE FRANCIS J. HARVEY,** | ) | |
| **Secretary of the Army** | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE TO TRANSFER**

Defendant hereby moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim upon

which relief can be granted and Rule 12(b)(3) for improper venue.  Alternatively, defendant

requests that the Court transfer this action to the Eastern District of Virginia, which is the proper

jurisdiction for this case.  In support of this motion, Defendant respectfully submits the attached

memorandum of points and authorities and a proposed order.

Respectfully submitted,

_____
KENNETH L.  WAINSTEIN, D.C.  Bar #451058
United States Attorney

_____
RUDOLPH CONTRERAS D.C. Bar No.  434122
Assistant United States Attorney

_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MALCOLM BRUCE WESTCOTT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-0293 (JR)** |
| ) | |
| **THE HONORABLE FRANCIS J. HARVEY,** ) | |
| **Secretary of the Army** ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

This memorandum supports Defendant's motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim upon which relief can be granted and Rule 12(b)(3) for improper venue. Alternatively, defendant requests that the Court transfer this action to the Eastern District of Virginia, which is the proper jurisdiction for this case. Accordingly, Defendant requests that Plaintiff's Complaint be dismissed with prejudice or transferred.

## INTRODUCTION

Plaintiff requests this Court to expunge a Memorandum of Reprimand (MOR), expunge all military records referencing a Department of the Army investigation and a Report of Investigation (ROI), and remove all documents pertaining to Plaintiff's removal from the Brigadier General Promotion List (Compl. at 28 ¶¶ 1-3), to grant Plaintiff attorney fees (Compl. at 28, ¶ 5), and to award litigation "costs" to Plaintiff (Compl. at 36 ¶ 4). Plaintiff filed his Complaint in this Court on February 17, 2006. Plaintiff's challenges to these military personnel

and disciplinary actions are nonjusticiable. Additionally, venue is improper as neither party is

located in the District of Columbia and none of the underlying events occurred here.

## BACKGROUND[1]

Plaintiff, is a retired Army Reserve officer residing in McDonough, Georgia. See Compl.

at ¶¶ 4, 6. Plaintiff served as Division Chief, Office of the Chief of the Army Reserve

("OCAR"). See id. at ¶ 13. Plaintiff also served as Chief of Operations, Training, and Force

Development Directorate. See id. at 71. In this capacity, at the direction of MG Baratz, Plaintiff

coordinated a "task order" ("TO") addition to an existing contract between the Army and SY

Technologies, Inc., a private defense contractor, in September, 1997. See id. at ¶¶ 71-85.

Plaintiff reviewed and approved a Task Order Plan ("TOP") submitted by SY Tech, and MG

Baratz approved expenditures for the task order for the period September, 1997 through

September, 1998. See id. at ¶¶ 84, 85. MG Baratz retired as Chief, Army Reserve in May, 1998,

and on July 1, 1998, went to work for SY Tech. See id. at ¶ 88. SY Tech continued contractual

relations with OCAR, and MG Baratz was involved with ongoing initiatives of MG Plewes, the

new Chief, Army Reserve. See id. at 172, 173, 176-79.

In 1998, Plaintiff requested that the Deputy Chief, Army Reserve ("DCAR") initiate an

AR 15-6 informal investigation of a subordinate OCAR officer who had been counseled

regarding unprofessional conduct towards enlisted women. See Compl. at ¶¶ 13-17. The

investigation was completed and submitted to the DCAR on June 12, 1998. See id. at ¶ 15. As a

result of the investigation an MOR was placed in the Official Military Personnel File ("OMPF")

of the offending officer. See id. at ¶ 16. In his capacity as the offending officer's Senior Rater

---

[1] The following facts are taken from Plaintiff's complaint and are presumed true for
purposes of this motion.

2

for an Officer Effectiveness Report ("OER") for the period April 1, 1998 through November 30, 1998, Plaintiff recommended in an OER dated April 23, 1999 that the offending officer "be removed from active duty status as soon as possible." See id. at ¶¶ 17-18.

After the MOR and OER, the offending officer complained to the Department of Defense Inspector General ("DODIG") that Plaintiff had violated provisions of the Military Whistleblower Protection Act ("the first DODIG complaint"). See Compl. at ¶ 19. DODIG initiated an investigation regarding the offending officer's complaint against Plaintiff. See id. at ¶ 20. Subsequently, on June 1, 1999, a call was placed to a DODIG hotline with allegations of violations of government ethics laws by OCAR officers during and after MG Baratz's tenure as Chief, Army Reserve. See id. at ¶ 24. In response to the hotline call, another complaint alleging misconduct by Plaintiff, MG Max Baratz, and other OCAR officers was filed with the DODIG ("the second DODIG complaint"). See id. at ¶ 23. The second DODIG complaint was referred to the Department of the Army Inspector General ("DAIG"). See id. at ¶ 24.

On July 22, 1999, the DAIG recommended that the allegations contained in the second DODIG complaint be referred to a preliminary inquiry. See Compl. at ¶ 122. On August 16, 1999, the DAIG recommended that the allegations contained in the second DODIG complaint be referred to the Army Criminal Investigation Division ("CID"). See id. at ¶ 125. The CID began an investigation into the allegations. See id. at ¶ 25. As a witness, Plaintiff submitted to questioning by CID investigators October 8, 1999 and October 21, 1999. See id. at ¶ 30. Upon completion of the CID investigation, the matter was referred to the Office of the United States Attorney ("USAO") for possible criminal prosecution. See id. at ¶ 31. Plaintiff twice testified as

3

a witness before a federal grand jury in response to two USAO subpoenas.  See id. at ¶¶ 32, 34,

35.  The grand jury returned no indictment against MG Baratz or Plaintiff.  See id. at ¶ 35.

On May 25, 1999, the Army announced that Plaintiff had been selected to serve as

Deputy Chief, Army Reserve, a Brigadier General billet.  See Compl. at ¶ 91.  On May 27, 1999,

the Army Chief of Staff announced that Plaintiff had been selected for promotion to Brigadier

General.  See id. at ¶ 21.  On June 29, 1999, Plaintiff was selected for promotion to the rank of

Brigadier General by the June 1999 U.S. Army Reserve General Officer Promotion Selection

Board.  See id. at ¶ 22.  However, on September 22, 1999, at which time Plaintiff was under

investigation by the DODIG arising out of the first DODIG complaint, and under preliminary

investigation by the DAIG and the CID arising out of the second DODIG complaint, the

Secretary of the Army withheld Plaintiff's name from the list of promotions that the Secretary

forwarded to the Senate for approval.  See id. at ¶¶ 20, 22, 26, 93, 94, 122.

By letter dated November 15, 1999, the DODIG informed Plaintiff that their investigation

of the first complaint against Plaintiff failed to substantiate allegations, and that unfavorable

actions taken against the offending officer were justified.  See Compl. at ¶ 22.  Soon after that

letter, however, the Army informed Plaintiff by telephone of the second complaint to the

DODIG.  See id. at ¶ 23.

On March 9, 2000, CID referred to the DAIG the allegations of wrongdoing by Plaintiff

contained in the second complaint.  See Compl. at ¶ 42.  Plaintiff was informed through his

military counsel in March 2000 that the DAIG had initiated a preliminary investigation for

possible investigative action against Plaintiff.  See id. at ¶ 36.  Plaintiff and his counsel contacted

the DAIG to request expedition and information on several occasions.  See id. at ¶¶ 38-40.  On

February 7, 2001 the DAIG issued a Directive for Investigation to conduct a general investigation

4

into two allegations against Plaintiff: (1) that Plaintiff was negligent in performing his duties as a contracting officer's technical representative ("COTR"); and (2) that Plaintiff violated standards of ethical conduct in contracting and related activities pertaining to a private defense contractor, SY Tech.  See id. at ¶¶ 41, 43, 71-89.  Plaintiff was notified by telephone that the DAIG had completed its preliminary investigation and undertaken a full investigation against Plaintiff.  See id. at ¶ 47.  On April 23, 2001, DAIG investigators interviewed Plaintiff and informed him of the allegations against him.  See id. at ¶ 49.  The DAIG investigation ultimately substantiated the first of the two allegations, that Plaintiff negligently performed his duties as a COTR.  See id. at ¶ 43, 44.  In response to a FOIA request, Plaintiff received a redacted copy of the DAIG Report of Investigation ("ROI"), though no records were found pertaining to delay of Plaintiff's promotion.  See id. at ¶¶ 52, 116.

The ROI was forwarded to MG John M. Keane, Army Vice Chief of Staff, who approved the ROI on July 9, 2001.  See Compl. at ¶ 58.  On October 19, 2001, based on the ROI, MG Keane issued an MOR for placement in Plaintiff's OMPF.  See id. at ¶ 60.  By memorandum dated April 5, 2002, Plaintiff submitted to MG Keane a rebuttal requesting that the MOR not be placed in Plaintiff's OMPF due to factual and other errors in the DAIG investigation and the ROI.  See id. at ¶ 69.

On June 15, 2002, Plaintiff submitted a Request for Voluntary Resignation.  See Compl. at ¶¶ 97, 141.  On July 15, 2002, the Army informed Plaintiff that Plaintiff was referred to a Promotion Review Board for a recommendation of retention or removal.  See id. at ¶ 142.  The Board approved Plaintiff's request and Plaintiff voluntarily retired from the Army Reserve on February 1, 2003.  See id. at ¶ 143.  On or around June 18, 2004, Plaintiff filed an application

with the DASEB requesting that the MOR be removed from Plaintiff's OMPF.  See id. at ¶ 98.

The DASEB denied Plaintiff's requested relief on November 5, 2004.  See id. at ¶ 102.

On February 17, 2006, Plaintiff initiated this action against the Secretary of the Army in

the United States District Court for the District of Columbia.  Plaintiff specifically alleges the

DASEB's decision not to remove the MOR was arbitrary and capricious, contrary to law, or

unsupported by substantial evidence with respect to: *(1)* the Army's failure to comply with notice

requirement of AR 600-37, ¶ 3; *(2)* the Army's failure to comply with the written notice and

response requirements of 10 U.S.C. § 14311(c)(1)-(2) and AR 600-8-29, ¶ 1-20; *(3)* the Army's

failure to comply with the basis for delay requirement of 10 U.S.C. § 14311(a)(1)(B) and AR

600-8-20; *(4)* the Army's failure to comply with the eighteen-month time limit for delay of

promotion of 10 U.S.C. § 14311(d) and AR 600-8-29, ¶ 1-20(b); *(5)* the Army's violation of due

process and administrative procedure requirements of AR 20-1, ¶¶ 3-3(a), 7-6, and 8-6 and of

The Inquiries and Investigations Guide, Ch. II, ¶ 2(a)1; and *(6)* the DAIG's insufficient evidence

to support the factual findings giving rise to Plaintiff's MOR.  See Compl. at ¶¶ 103-215.

Plaintiff requests expunction from Plaintiff's OMPF the MOR and documents referring to the

MOR, expunction from Plaintiff's OMPF of documents referring to the DAIG's ROI, expunction

from Plaintiff's OMPF documents referring to Plaintiff's removal from the Brigadier General

Promotion List, and costs and fees.  See id. at p. 28.

## STANDARD OF REVIEW

### I.  Failure to State a Claim

Under Fed. R. Civ Pro. 12(b)(6), a motion to dismiss should be granted only if the

"Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief."

6

Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing* Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  The court must resolve all factual doubts in favor of the Plaintiff and allow the Plaintiff the benefit of all inferences.  *See* EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

     In reviewing a motion to dismiss, the Complaint's factual allegations must be presumed true and all reasonable inferences drawn in Plaintiff's favor.  Kowal, 16 F.3d at 1276.  While Plaintiff is entitled to all favorable inferences that can be drawn from those allegations, Warth v. Seldin, 422 U.S. 490, 501 (1975), the Court need not accept inferences drawn by Plaintiff if such inferences are unsupported by the facts set out in the complaint.  Kowal, 16 F.3d at 1276.  Further, while the Court must accept Plaintiff's allegations of fact as true, the Court is not required to accept as correct the conclusions Plaintiff would draw from such facts.  Taylor v. Federal Deposit Insurance Corp., 132 F.3d 753, 762 (D.C. Cir. 1997); National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996).  Nor must a court "accept legal conclusions cast in the form of factual allegations."  Kowal, 16 F.3d at 1276; *see also* Papasan v. Allain, 478 U.S. 265, 286 (1986).

## II.  Venue

     On a motion to dismiss for improper venue under Rule 12(b)(3), the court accepts as true the plaintiff's well-pled allegations and draws all reasonable inferences from those allegations in the plaintiff's favor, although the court need not accept plaintiff's alleged legal conclusions as true.  Darby v. Department of Energy, 231 F. Supp.2d 274, 276 (D.D.C. 2002).  The standard for determining venue in a civil action in which an officer of a United States agency or a United States agency is a defendant is the general venue statute, 28 U.S.C. § 1391(e).  Section 1391(e) provides for venue where a defendant to the action resides, where a substantial part of the alleged

events giving rise to the claim occurred, or where the plaintiff resides.  28 U.S.C. § 1391(e).

## ARGUMENT

The Court of Appeals for the D.C. Circuit has recognized that "A court should not review internal military affairs in the absence of…exhaustion of available intraservice corrective measures."  Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986) (citing Mindes v. Seaman, 453 F.2d 197, 201 (5th Cir. 1971); Sohm v. Fowler,  365 F.2d 915, 917-18 (D.C. Cir. 1966); and Bolger v. Marshall, 193 F.2d 37, 39 (D.C. Cir. 1951)).   Decisions regarding military discipline are not directly reviewable by the Court.  Brannum v. Lake, 311 F.3d 1127 (D.C. Cir. 2002), (dismissing under Feres[2] doctrine appellant's constitutional and statutory claims regarding alleged procedural violations suffered in Article 15 NJP imposed in lieu of court martial).  The D.C. Circuit recently reiterated that military disciplinary decisions are not reviewable absent a decision of a Military Correction Board. In Piersal v. Winter, 435 F.3d 319 (D.C.Cir., 2006), the Court stated:

> In Kreis we also acknowledged the "fundamental and highly salutary principle" that "[j]udges are not given the task of running the [military]." 866 F.2d at 1511 (quoting Orloff v. Willoughby, 345 U.S. 83, 93 (1953)); see also Gilligan v. Morgan, 413 U.S. 1, 10 (1973). In light of that principle, we held nonjusticiable a serviceman's claim for retroactive promotion. We held justiciable, however, the serviceman's "more modest request" to review "the reasonableness" of the decision of a military board of correction pursuant to the standards of the APA. Kreis, 866 F.2d at 1511.

Id. at 322.  Plaintiff here seeks direct review of the military disciplinary action imposing a Memorandum of Reprimand on Plaintiff and the review conducted by the purely military review board the DASEB.

Judicial review of military decisions under the APA is limited in the D.C. Circuit to the

---

[2] Feres v. United States, 340 U.S. 135 (U.S. 1950).

decisions of civilian agencies, and it does not extend to the final determinations of purely military bodies.  Compare Piersall v. Winter, 435 F.3d 319, 323 (D.C. Cir. 2006) (holding that Feres doctrine does not limit justiciability of APA claims with respect to the decisions of civilian boards for correction of military records (citing Kreis, 866 F.2d at 1513)) with Brannum v. Lake, 311 F.3d 1127, 1129, 1131 (dismissing under Feres appellant's constitutional and statutory claims regarding alleged procedural violations suffered in Article 15 NJP imposed in lieu of court martial).  In Piersall, appellant Commander in the Navy sought review of the district court's dismissal of his equitable claims to vacate a decision of the BCNR and expunge unfavorable information in appellant's file.  The D.C. Circuit reversed, finding the district court's reliance on Brannum misplaced.  Piersall, 435 F.3d at 323-24.  The court reasoned that boards for the correction of military records were *civilian* bodies separate and apart from the system of military courts and appeals and charged with the authority to change a military record when necessary to "correct an error" or "remove an injustice," and therefore the doctrine of judicial review established in Kries survived Brannum.  Id. at 323-24 (citing 10 U.S.C. § 1552(f)).  Unlike the agency determination in Piersall, the DASEB case record review determination here was made by a board of the Department of the Army consisting entirely of senior commissioned officers.  AR 600-37 ¶ 6-1(a)-(b).  The MOR was ultimately filed in COL Westcott's OMPF only upon the order of MG John M. Keane, Army Vice Chief of Staff, a general officer senior to COL Westcott.  The case record review determination was thus military in nature, more analogous to an Article 15 proceeding than a BCNR determination, and deserving of the "sensitivity to the special requirements of the military" recognized in Feres and Brannum, 311 F.3d at 1131.

While the Court in Piersall recognized that limits of the Feres doctrine are indistinct, DASEB case record reviews clearly are the type of military determinations held non-reviewable , because DASEB case record review determinations involve matters of military discretion beyond the competence of civilian courts.  In Piersall, the court reasoned that decisions by the BCNR could be reviewed because military boards for correction were generally prohibited from reviewing the records of courts martial.  Piersall, 435 F.3d at 323.  By contrast, although the DASEB does not directly review records of courts martial, it is required to make impartial and independent case record review determinations on matters previously considered by other military authorities, including courts martial.  AR 600-37 ¶ 6-3(c).  Further, in certain instances the DASEB has authority to recommend initiation of separation or elimination.  AR 600-37 ¶ 6-3(a)(1).  Military discipline is an area of the greatest judicial deference to military decision making.  See Chappell v. Wallace, 462 U.S. 296, 305 (1983) (noting that "courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have").  The special considerations associated with military discipline have led the Supreme Court and lower courts to limit sharply civilian court intrusion into military affairs at the request of service personnel in other contexts as well.  For example, suits under the Federal Tort Claims Act by members of the military for injuries received incident to their military service are absolutely barred under the doctrine of Feres v. United States, 340 U.S. 135 (1950), because, inter alia, the mere process of such suits in civilian courts would interfere with essential military discipline.  See. United States v. Johnson, 481 U.S. 681 (1987); United States v. Shearer, 473 U.S. 52 (1985).  Constitutional claims by service members against their superior officers brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388

10

(1971), are likewise barred for the same reasons.  See. United States v. Stanley, 483 U.S. 669 (1987); Chappell, 462 U.S. at 298.

Similarly, the D.C. Circuit has cautioned against judicial interference in "personnel and other command decisions" necessarily affecting personnel decisions.  Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986); see also Gilligan v. Morgan, 413 U.S. 1, 6-7 (1973) (finding that decisions regarding the "composition and qualifications of the armed forces are matters for Congress and the military," not the judiciary); Orloff v. Willoughby, 345 U.S. 83, 90-91 (1953) (holding that the commissioning of officers is within the complete discretion of the President as Commander in Chief and unreviewable by the Court); Adkins v. United States, 68 F.3d 1317, 1324 (Fed. Cir. 1995) ("Courts will not interject themselves into the promotion process.").  By contrast, the very purpose of DASEB review of case records "is to determine if there is unfavorable information . . . of such a serious nature that it should, unless properly explained, *be made part of the OMPF for use by personnel managers and selection boards*."  AR 600-37 ¶ 6-3(a) (emphasis added).  Such matters of strictly military discretion as military discipline and personnel decisions overcome any presumption of judicial review under the APA and counsel the dismissal of equitable claims such as those brought by Plaintiff in this case.

Under the Feres doctrine, as explained in Kreis, Brannum and Piersal, exhaustion of ABCMR appeal is required as a predicate of judicial review of Army administrative decisions. In Feres, the Supreme Court construed the FTCA – on its face an unqualified grant of congressional authority for judicial review – to be qualified in its application to the military by the "comprehensive system" of intramilitary remedies that were part of an "entire statutory system of remedies against the government."  Feres v. United States, 340 U.S. 135, 139-40.  In

light of these considerations, the Court held that the FTCA did not apply to tort claims by

petitioner service members.  Id.  The Court extended this line of interpretive analysis to

constitutional tort claims brought by service members, holding that such claims could not be

brought in light of the fact that Congress had already provided a "comprehensive internal system

of justice to regulate military life" and adjudicate such claims.  Chappell, 462 U.S. at 302.  The

Court in Chappell specifically noted that review by a board for correction of military records was

part of this carefully constructed "comprehensive internal system of justice," and judicial review

was limited to review of BCMR determinations under an "arbitrary and capricious" standard.  Id.

The D.C. Circuit subsequently used the Feres doctrine as a tool of statutory construction when it

held that 42 U.S.C. § 1985(3) claims were unavailable to service members.  See Bois, 801 F.2d

at 469.

> Feres itself represents a refusal to read statutes with their ordinary sweep.  The
> unique setting of the military led the Feres Court to resist bringing the armed
> services within the coverage of a remedial statute in the absence of an express
> congressional command. Moreover, Feres principles were invoked by the Court in
> Chappell to foreclose assertion of constitutional rights. Taken together, Feres and
> Chappell powerfully suggest that *the obvious effects on military discipline . . .*
> *counsel against an expansive interpretation of another remedial statute so as to*
> *encompass military personnel.*

Id. at 469 n.13 (emphasis added).[3]  Applying the Feres doctrine to the facts in this case, the APA

is a remedial statute of general applicability, and the statute contains no express Congressional

command that civilians and military service members be treated identically.  Furthermore, the

---

[3]  The Feres doctrine has been broadly applied beyond FTCA claims and constitutional torts to prevent service members from using generally applicable statutes in civilian courts.  See Captain E. Roy Hawkens, The Exhaustion Component of the *Mindes* Justiciability Test is Not Laid to Rest by *Darby v. Cisneros*, 166 Mil. L. Rev. 67, 82 n.92 (2000) (noting the application of Feres in several jurisdictions to limit the military application of numerous generally applicable remedial statutes, including: the ADA; 42 U.S.C. § 1983 for deprivation of rights; 5 U.S.C. §§ 2301-2302 for protection of federal whistleblowers; Title VII; and 42 U.S.C. § 1981 for equal rights).

DASEB and the ABCMR together constitute complementary organs within a comprehensive internal system of justice to regulate military life.  See AR 600-37 ¶ 7-6 (appeals for correction of military records "should be sent to the ABCMR"); AR 15-185 ¶ 2-5 (applicants must exhaust administrative remedies, including DASEB appeal, prior to appealing to the ABCMR).  Accordingly, decisions of the DASEB are not reviewable, and judicial review should be limited to review of ABCMR determinations under an "arbitrary and capricious" standard.

Relatedly and in addition to the Feres doctrine, the D.C. Circuit has found under the doctrine of primary jurisdiction, support for the dismissal or staying of claims by service members pending resolution by a board for correction of military records.  See Sohm v. Fowler, 365 F.2d 915, 919 n.10 (D.C. Cir. 1966).  Even if resort to the BCMR were not a requirement for review, "the proper disposition would still be for the court to stay its hand pending resort to the administrative process" under the doctrine of primary jurisdiction.  Id.

> That doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime. Rather, the question in each instance is whether a case raises "issues of fact not within the conventional experience of judges," but within the purview of an agency's responsibilities; whether the "limited functions of review by the judiciary are more rationally exercised, by preliminary resort" to an agency "better equipped than courts" to resolve an issue in the first instance; or, in a word, whether preliminary reference of issues to the agency will promote that proper working relationship between court and agency that the primary jurisdiction doctrine seeks to facilitate.

Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 672 (U.S. 2003) (J. Breyer concurring in part and concurring in the judgment).

In Sohm, appellant Lieutenant Commander in the Coast Guard, after abandoning an appeal before the BCMR, sought to enjoin non-voluntary retirement in the district court.  The district court held that appellant did not need to exhaust administrative remedies, and the D.C.

Circuit reversed and remanded, instructing the district court to stay litigation pending appeal to the BCMR. Id. at 917. The court reasoned that entertaining a claim by a service member prior to adjudication of a BCMR appeal raised problems of forum shopping and judicial waste in adjudicating what might be an advisory opinion. Id. at 917-18. The court further reasoned that a BCMR hearing had the power to correct constitutional and administrative procedural violations alleged by appellant, as well as the "specialized knowledge and experience" to make findings of fact regarding alleged procedural violations and to construe administrative regulations. Id. at 918-19. The court resolved the case under the exhaustion doctrine, but noted that the doctrine of primary jurisdiction was dispositive under exactly the same analysis. Accord Williams v. Sec'y of the Navy, 787 F.2d 552, 560 (Fed. Cir. 1986) ("[i]f . . . bypassing the congressionally created system attempted by [appellant] were permissible, Congress would be well advised to dismantle the military justice system as no longer required."). The Sohm court's reasoning applies equally to this case. Plaintiff alleges procedural violations of Army regulations that are best considered in the first instance by the Army, both because the ABCMR has the power to correct violations of Army procedures and regulations, see 32 C.F.R. 581.3; 10 U.S.C. § 1552(a)-(d), and because the ABCMR has the specialized knowledge and experience to make findings of fact and construe regulations. Moreover, permitting Plaintiff to make an end-run around the contemplated system of administrative appeals encourages forum shopping among service members dissatisfied with the resolution of DASEB determinations, and leads to the possibility of advisory opinions to the extent that pending litigation does not bar a plaintiff applying to the ABCMR.

Plaintiff does not face irreparable harm and his alleged injuries are redressable by the ABCMR. In determining when resort to the BCMR is required, Court's in this circuit have drawn a distinction between efforts to end or avoid military service, where Plaintiff faces

immediate irreparable harm and efforts to be reinstated into military service or to be promoted where any harm is remediable. As the Court stated in Dowds v. Bush, 792 F. Supp. 1289 (D.D.C. 1992):

> Plaintiffs fail to acknowledge the distinction drawn in subsequent cases between efforts to end or avoid military service and efforts to be reinstated into military service. In the former, courts have been less willing to require pursuit of remedies from a military board because during the delay that this causes, the plaintiff is in the military, possibly unlawfully. Thus, the harm caused by the delay can be irreparable. In a situation like the one presented here, however, where the claim is for unlawful exclusion from the military or improper denial of promotion, the delay can be compensated by awarding backpay, seniority, etc. Thus, in this kind of a case, where the delay is less prejudicial, i.e., the damages suffered are not irreparable, courts have required pursuit of remedies within the military. In these cases, the courts' reluctance to interfere with internal military affairs has been paramount.

Id. at 1291.  "Moreover, the court has held that it is insufficient for the plaintiff to have pursued relief through the chain of military command only. 'When exhaustion is required, it is not complete if relief has not been sought before the Board.'"  Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 60-61 (D.D.C. 2001) quoting Dowds, supra at 1293.

The precise confines of the Feres doctrine remain indistinct in the D.C. Circuit, see Piersall, 435 F.3d at 323, and the United States District Court for the District of Columbia has interpreted Darby to prevent the court from imposing an exhaustion requirement on claims brought under the APA and not first appealed to the ABCMR.  However, the Feres doctrine, combined with the purely military nature of determinations by the DASEB, and in light of the teachings of the Supreme Court and the D.C. Circuit that judicially reviewable decisions by boards for correction of military records make up an important part of a separate and comprehensive military system of justice, strongly counsel for review by the ABCMR before resort to judicial review.

15

### C.    Venue

The standard for determining venue in a civil action in which an officer of a United States agency or a United States agency is a defendant is the general venue statute, 28 U.S.C. § 1391(e). Section 1391(e) provides for venue where a defendant to the action resides, where a substantial part of the alleged events giving rise to the claim occurred, or where the plaintiff resides.  28 U.S.C. § 1391(e).  Officers and agencies of the United States may have more than one residence for purposes of 28 U.S.C. 1391(e)(1) where the officer or agency performs a "significant amount" of official duties in more than one jurisdiction.  Smith v. Dalton, 927 F.Supp. 1, 6 (D.D.C. 1996) (citing Bartman v. Cheney, 827 F.Supp. 1, 2 (D.D.C. 1993)).  In Lamont v. Haig, 590 F.2d 1124 (D.C. Cir. 1978) the D.C. Circuit established a two-pronged  "preponderance of the contacts" test for determining venue under 28 U.S.C. § 1391(b), whereby "[i]n effect the court is charged . . . with evaluating the contacts between the forum and plaintiff's allegations, [and] also weighing that forum's convenience for the litigants."  Thornwell v. United States, 471 F.Supp. 344, 355-56 (D.D.C. 1979) (citing Lamont, 590 F.2d at 1132).  In other words, venue is proper in the place where a claim arose, and determination of the place where a claim arose requires a court to engage in a "common sense appraisal" of "events having operating significance in the case."  Mundy v. Weinberger, 554 F.Supp. 811, 817-18 (D.D.C. 1982) (citing Lamont, 590 F.2d at 1134)).   In determining venue under section 1391(e), courts must utilize the same preponderance of the contacts test employed under section 1391(b).  Id. at 357.  "As a general rule, venue must be established for each cause of action."  Saran v. Harvey, 2005 U.S. Dist. LEXIS 8908, *4-*5 (D.D.C. May 9, 2005) (citing Lamont, 590 U.S. at 1135).  For the

convenience of the parties, courts may transfer a civil action to any other district or division where the civil action might have been brought. 28 U.S.C. § 1404(a). Where a civil suit is filed in the wrong venue, a district court shall dismiss, or if it be in the interest of justice, transfer to any other district or division where the civil action might have been brought. 28 U.S.C. § 1406(a).

Applying these principals to the facts in this case it is clear that venue is improper in the District of Columbia, and the case should accordingly be either dismissed or transfered to the Eastern District of Virginia. The Defendant in this case, the Secretary of the Army, resides at the Pentagon in Arlington, VA. Saran, 2005 U.S. Dist. LEXIS at *6 (citing Chance v. Dewitt Army Cmty. Ctr., 2002 U.S. Dist. LEXIS 10575 (D.D.C. Jan 28, 2002)); Donnell v. Nat'l Guard Bureau, 568 F.Supp. 93, 94 (D.D.C. 1983) (holding that, despite a Washington, D.C. mailing address, the Secretary of the Army, head of the Department of the Army, has his principal place of business in the Pentagon in Arlington, VA, and hence "resides" in the Eastern District of Virginia). Plaintiff resides in Georgia. Complaint at ¶ 4. All relevant decisions and administrative actions concerning the DAIG ROI and Plaintiff's MOR were taken in Virginia. See Complaint. Therefore, the operative events with respect to each of Plaintiff's six claims all arose in Virginia.

While some Courts in this circuit have held venue to be proper in the District in cases against military defendants based in the Pentagon, these cases cite Mundy which made detailed findings with respect to the locus of events having operating significance in the case. Mundy v. Weinberger, 554 F.Supp. 811, 817-18 (D.D.C. 1982). In Mundy, the Court found that it was "especially significant" that plaintiff worked for the Department of Defense from the District of

Columbia, and DOD decisions made in Virginia affected only plaintiff in the District of Columbia. <u>Mundy</u>, 554 F.Supp. 817-18. Cases making blanket statements with regard to military or defense officials based in the Pentagon have not analyzed the locus of "events having operating significance in the case." <u>See, e.g.</u>, <u>Smith</u>, 927 F.Supp. at 6 (concluding that the Secretary of the Navy resides in Washington, D.C. as well as in Virginia for venue purposes). Unlike <u>Mundy</u>, no events in this case took place in the District. Plaintiff resides in Georgia. Complaint at ¶ 4. The actions complained of occurred either in Georgia or in the Pentagon, in Virginia. <u>See</u> <u>Complaint.</u>

The second prong of the <u>Lamont</u> test requires a court to evaluate venue in terms of the convenience of the parties. Although it is arguably convenient for officials or agencies based in the Pentagon to submit to a lawsuit in Washington, D.C., given the weight of authority counseling dismissal where neither Plaintiff nor Defendant resides in a jurisdiction and no actions giving rise to a claim occurred there, this case should be dismissed or transferred to the Eastern District of Virginia.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint or in the alternative transfer it to the Eastern District of Virginia.


Respectfully submitted,


_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

18

_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney


_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895

19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MALCOLM BRUCE WESTCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 06-0293 (JR) |
| | ) |
| THE HONORABLE FRANCIS J. HARVEY, | ) |
| Secretary of the Army | ) |
| Defendant. | ) |
| | ) |
| | ) |

**ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss, or in the alternative, to transfer.  Based upon the motion, the opposition thereto, and the entire record herein, it is this _____ day of _____, 20___ hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that judgment shall be entered for Defendant, and that this matter is hereby DISMISSED.

This is a final, appealable order.

SO ORDERED.

_____
JAMES ROBERTSON
United States District Judge

Copies to:

Parties via ECF