THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MALCOLM BRUCE WESTCOTT,    )
    )
    *Plaintiff*,    )
    )
    v.    )    Civil Action No. 06-0293 (JR)
    )
THE HONORABLE    )
FRANCIS J. HARVEY,    )
    )
    *Defendant*.    )
_____)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER

### I. INTRODUCTION

This action involves judicial review under the Administrative Procedure Act ("APA") of a final agency decision issued by the Department of the Army, of which Defendant is the Secretary. The decision appealed against was made by the Department of the Army Suitability Evaluation Board ("DASEB"), which is established pursuant to Army regulation. The DASEB is the final uniformed appeal authority within the Department of the Army for challenges to the filing of unfavorable information in an officer's Official Military Personnel File ("OMPF"). A soldier dissatisfied with a DASEB decision may elect to appeal the decision to the Army Board for the Correction of Military Records ("ABCMR").

In his motion to dismiss, Defendant argues that Plaintiff must first seek relief before the ABCMR before bringing suit in this Court. Defendant contends that because the DASEB consists of senior military officials instead of civilians, its decisions are not amenable to review by this

Court. Defendant attempts to analogize decisions of the DASEB to processes that impose judicial or non-judicial punishment on soldiers. Defendant contends that DASEB decisions are unreviewable under the law of the D.C. Circuit, specifically the court's decision in *Piersal v. Winter*, 435 F.3d 319 (D.C. Cir. 2006).

In formulating his arguments, Defendant neglects contrary precedent from the U.S. Supreme Court and this Court. As Plaintiff demonstrates below, binding precedent allows him to choose or not choose to pursue relief before the ABCMR before seeking review in this Court. Plaintiff further demonstrates that decisions by the DASEB are final agency actions and are reviewable under the APA.

Defendant's motion to transfer is premised on the argument that the Secretary of the Army's residence is the Pentagon, which, despite its official Washington, D.C. address, is actually located in Virginia. He likewise argues that because most events giving rise to this action took place at the Pentagon or the DASEB offices in Virginia, venue in this District is improper. Defendant seeks to distinguish, and in effect asks this Court to overrule, strong precedent holding that venue is proper in this Court under 28 U.S.C. § 1391(e) because the secretaries of the military departments perform a significant amount of their official duties in the District of Columbia.

## II.  STATEMENT OF FACTS

While serving as Division Chief, Office of the Chief of the Army Reserve ("OCAR"), COL Westcott was advised that a subordinate officer had been counseled regarding his unprofessional conduct toward an enlisted woman.  Compl. ¶ 13. Because of the seriousness of the allegations involved, COL Westcott requested that the Deputy Chief, Army Reserve ("DCAR"), initiate an informal investigation under Army Regulation ("AR") 15-6 to determine the facts of the matter.

Compl. ¶ 14.  The investigation was completed on June 12, 1998 and submitted to the DCAR. Compl. ¶ 15.  As a result of the investigation, the DCAR placed a Letter of Reprimand ("LOR") in the offending soldier's Official Military Personnel File ("OMPF"). Compl. ¶ 16.

COL Westcott served as the offending officer's Senior Rater for an Officer Effectiveness Report ("OER") covering the period of April 1, 1998 through November 30, 1998, the period during which the AR 15-6 investigation was undertaken and completed.  Compl. ¶ 17.  COL Westcott signed the OER on April 23, 1999, recommending that the offending officer "be removed from active duty status as soon as possible."  Compl. ¶ 18.

As a result of the LOR and the negative OER, the offending officer complained to the Department of Defense Inspector General ("DODIG"), alleging that COL Westcott had violated provisions of the Military Whistleblower Protection Act.  Compl. ¶ 19. The DODIG initiated an inquiry into the matter.  Compl. ¶ 20.  On May 27, 1999, the Army Chief of Staff announced that COL Westcott had been selected for promotion to Brigadier General. Compl. ¶ 21.

By letter dated November 15, 1999, the DODIG informed COL Westcott that the investigation failed to substantiate the allegations, and that the unfavorable actions taken against the offending officer were justified. Compl. ¶ 22.  Shortly thereafter, the Army telephonically informed COL Westcott that a second complaint had been filed with the DODIG, alleging that he and other senior Army officers within OCAR had engaged in misconduct in the execution of their duties. Compl. ¶ 23.  The hotline call, placed on June 1, 1999, was referred to the DAIG and Army Criminal Investigation Division ("CID") for appropriate action. Compl. ¶ 24. The CID began an extensive investigation into the allegations during the summer of 1999.  Compl. ¶ 25. The CID identified COL Westcott as a witness in the investigation, not as subject. Compl. ¶ 26. The

allegations giving rise to the investigation were that a general officer had violated government ethics laws during and after his tenure as Chief of the Army Reserve. Compl. ¶ 28.

In March, 2000, COL Westcott's military counsel was informed that the DAIG was considering investigative action against COL Westcott for his role in the allegations against the general officer. Compl. ¶ 36. Because COL Westcott's promotion was being delayed while he was occupying a Brigadier General billet, COL Westcott and his counsel made numerous attempts to clarify the status of the DAIG's concerns and to expedite an investigation if one were to be undertaken. Compl. ¶ 38. In a letter dated October 31, 2000, LTC Scott L. Kilgore, Area Defense Counsel, stated

> your office informed me [in response to a memorandum of August 11, 2000] that it would conduct a preliminary inquiry (PI) into the credibility of the allegations against COL Westcott. Now, almost three months later, I have learned that the PI is just getting underway. …No installation commander would tolerate such a lethargic investigation from his or her officers (or NCOs for that matter!). Yet, the DAIG continues to plod along. No soldier should endure the unending purgatory that befalls those who are the target of DAIG complaints. Anything you can do to expedite the DAIG review of COL Westcott's case is sincerely appreciated.

Compl. ¶ 40.

Over three months later, on February 7, 2001, the DAIG received a Directive for Investigation from General Keane authorizing investigators to conduct an inquiry into allegations involving COL Westcott. Compl. ¶ 41. The Directive stated that "[o]n 9 March 2000, CID referred COL Westcott's allegations to DAIG for appropriate action. On 22 March 2000, CID informed DAIG that their investigation did not establish any evidence of criminal wrongdoing on the part of COL Westcott." Compl. ¶ 42. The DAIG determined that two allegations warranted further

4

investigation: 1) whether COL Westcott performed his duties as a contracting officer's representative in a negligent manner; and 2) whether COL Westcott violated standards of ethical conduct in contracting and related activities pertaining to a private corporation that engaged in defense contracting. Compl. ¶ 43.  The DAIG investigation ultimately substantiated only the first of these two allegations.   Compl. ¶ 44.

After the investigation was completed, the ROI was forwarded to General John M. Keane, the Army Vice Chief of Staff, who approved the report on July 9, 2001. Compl. ¶ 58.  The ROI substantiated an allegation against COL Westcott that he had negligently performed his duties as a contracting officer's technical representative ("COTR"). Compl. ¶ 59. On October 19, 2001, General Keane issued COL Westcott a LOR based solely on the findings of the ROI. Compl. ¶ 60. The LOR was not accompanied by any of the documents on which the allegations were based, nor did it specify those documents in a separate listing. Compl. ¶ 61. The LOR did not state that COL Westcott enjoyed an opportunity to review those documents on a previous occasion. Compl. ¶ 62.

COL Westcott submitted a detailed rebuttal of the allegations in his response to the MOR. Compl. ¶ 63.  His rebuttal included sworn statements from numerous individuals familiar with the case. Compl. ¶ 64.  On October 19, 2001, MG Keane approved the LOR for placement in COL Westcott's OMPF. Compl. ¶ 60.  By memorandum dated April 5, 2002, COL Westcott submitted a rebuttal to MG Keane, requesting that the LOR not be placed in his OMPF due to factual and other errors in the DAIG investigation and ROI.  Compl. ¶ 69.

On May 25, 1999, the Army announced that COL Westcott had been selected to serve as Deputy Chief, Army Reserve, a Brigadier General billet. Compl. ¶ 91.  On June 29, 1999, COL Westcott was considered for promotion by the June 1999 U.S. Army Reserve General Officer

Promotion Selection Board, and was selected for promotion to the rank of Brigadier General. Compl. ¶ 92. On September 22, 1999, the Secretary of the Army forwarded the results of the promotion selection board to the U.S. Senate for confirmation. Compl. ¶ 93. On September 22, 1999, the Secretary withheld COL Westcott's nomination as a result of the filing of the anonymous DODIG complaint on June 1, 1999. Compl. ¶ 94. On November 5, 1999, the Senate confirmed the remaining officers on the promotion selection list. Compl. ¶ 96. On February 1, 2003, COL Westcott voluntarily retired from the Army Reserve. Compl. ¶ 97.

On or around June 18, 2004, COL Westcott filed an application with the DASEB. Compl. ¶ 98. By memorandum November 5, 2004, the DASEB denied all relief requested. Compl. ¶ 102. The DASEB did not provide a statement of reasons for its denial of COL Westcott's application. *Id*.

### III. <u>STANDARDS OF REVIEW</u>

#### <u>Federal Rules of Civil Procedure Rule 12(b)(1)(6)</u>

A motion made under Fed. R. Civ. P. 12(b)(6) should be granted only if the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Sparrow v. United Air Lines, Inc.,* 216 F.3rd 1111, 1114 (D.C. Cir. 2000). In evaluating a motion to dismiss, the court must presume that plaintiff's factual allegations are true and draw all reasonable inferences in plaintiff's favor. The court also must resolve all factual doubts in favor of the plaintiff. *Calloway v. Brownlee*, 366 F. Supp. 2d 43 (D.D.C. 2005).

#### <u>Venue</u>

Venue for this action is established by 28 U.S.C. § 1391(e): "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States,

may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." Self-evidently, a plaintiff need only satisfy one of the above criteria to establish jurisdiction. *See Smith v. Dalton*, 927 F. Supp. 1 (D.D.C. 1996).

## IV.  ARGUMENT

### 1. THE DASEB'S DECISION WAS A FINAL AGENCY ACTION AND IS REVIEWABLE BY THIS COURT

Defendant argues that this Court should dismiss Plaintiff's action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Defendant's contention is that recent decisions from this circuit preclude review of "military disciplinary decisions absent a decision of a Military Correction Board." Def.'s Mem. at 8.

Defendant further argues that "Plaintiff here seeks direct review of the military disciplinary action imposing a Memorandum of Reprimand on Plaintiff and the review conducted by the purely military review board the DASEB. … Judicial review of military decisions under the APA is limited in the D.C. Circuit to the decisions of civilian agencies, and it does not extend to the final determination of purely military bodies." *Id.*  Defendant's arguments are erroneous.

Plaintiff's action seeks APA review of the decision of the DASEB. The DASEB is established by Army Regulation 600-37 (19 December 1986). Chapter 6 addresses the organization

7

and procedures of the board. Chapter 7 addresses the appellate function of the DASEB. Chapter 7-1 provides that "[a]ppeals and petitions for removal of unfavorable information are to be directed to the DASEB. This chapter sets forth the policies and procedures whereby a person may seek removal of unfavorable information from official personnel files."   The DASEB is the final uniformed appeal authority within the Department of the Army for the removal of LORs. *See* Army Regulation 600-37, Chapter 7-6.

Plaintiff applied to the DASEB for the removal of the LOR that was placed in his OMPF. Chapter 7-2(a) addresses "Appeals for removal of OMPF entries," stating: "[o]nce an official document has been properly filed in the OMPF, it is presumed to be administratively correct and to have been filed pursuant to an objective decision by competent authority. Thereafter, the burden of proof rests with the individual concerned to provide evidence of a clear and convincing nature that the document is untrue or unjust, in whole or in part, thereby warranting its alteration or removal from the OMPF. Normally, consideration of appeals is restricted to grades E6 and above, to officers, and to warrant officers. Although any soldier may appeal the inclusion of a document placed in his or her file under this regulation, the appeals of soldiers in grades below E–6 will only be considered as an exception to policy. This does not include documents that have their own regulatory appeal authority such as evaluation reports and court-martial orders. Appeals that merely allege an injustice or error without supporting evidence are not acceptable and will not be considered."

The DASEB's procedures are comparable to those of the ABCMR. Chapter 7-2(d)(1) states, "[t]he process is administrative and non-adversarial in nature." Chapter 7-2(d)(2) provides, "Appellants and petitioners, or those on their behalf, are not authorized to appear in person before

the DASEB." Chapter 7-2(d)(3) states, "[t]he DASEB may request and consider any files, records, and reports believed to have relevance to a case under consideration." Chapter 7-2(d)(4) states that "[t]he DASEB may obtain corroboration from the appellant/petitioner, soldiers in the chain of command, or anyone thought to have firsthand knowledge relevant to a case. Any appellant/petitioner will generally be contacted, as necessary, by official correspondence."

Army Regulation 600-37, Chapter 3-4, addresses reprimands such as the one under challenge in this case. Chapter 3-4(b) addresses the filing of memoranda of reprimand in an officer's OMPF. Chapter 3-4(c)(2) requires memoranda filed in a soldier's OMPF to contain "a statement that indicates it has been imposed as an administrative matter and not as punishment under UCMJ, Article 15 [non-judicial punishment]."

Plaintiff is not required to pursue relief before the ABCMR. The U.S. Supreme Court in *Darby v. Cisneros*, 509 U.S. 137, 154 (1993), held that "…where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review. Courts are not free to impose an exhaustion requirement as a rule of judicial administration when the agency action has already become 'final' under § 10(c)."

The rule in *Darby* has been applied by this Court to dismiss arguments that plaintiffs must first pursue remedy before the boards for the correction of military records prior to seeking judicial review final agency action. In *Wilhelm v. Caldera*, 90 F. Supp. 2d. 3, 7 (D.D.C. 2000), the defendant sought dismissal of the action because the plaintiff had not pursued remedies with the ABCMR. Relying on *Darby*, this Court found that "there is no exhaustion required by statute or by agency rule. Both the BCMR enabling statute and its implementing regulation are devoid of any

language that mandates exhaustion of administrative remedies prior to judicial review." *See also, Nation v. Dalton*, 107 F. Supp. 2d 37, 43, n4 (D.D.C. 2000) ("There is no requirement that a records-correction claim first be presented for review to an appropriate Board"); *Battle v. United States Navy Board for Correction of Naval Records*, 2005 U.S. Dist. LEXIS 7994, *10, n1 (D.D.C. 2005) ("There is no requirement that a records correction claim under § 1552(a) first be presented to the Navy Board for review"); *Crane v. Secretary of the Army*, 92 F. Supp. 2d 155, 163 (W.D.N.Y. 2000) ("… plaintiff was not required to exhaust his administrative remedies prior to the present action. To date, neither the statute which governs the Army's administrative procedures, 10 U.S.C. § 1552(a), nor the Army's own internal regulations require exhaustion"); *Peres v. United States*, 850 F. Supp. 1354, 1360 (N.D. Ill. 1994) (no recourse to the Board for the Correction of Naval Records required before filing suit); *Ostrow, et al., v. Secretary of the Air Force*, 1995 U.S. App. LEXIS 3200 (D.C. Cir., Feb. 16, 1995) (unpublished disposition); and *Dowds v. Clinton*, 1994 U.S. App. LEXIS 4510 (D.C. Cir., Mar. 9, 1994) (unpublished disposition).

Defendant seeks to circumvent those decisions by arguing, in effect, that Plaintiff's claims somehow are non-justiciable. Defendant's argument appears to be that "military disciplinary decisions are not reviewable absent a decision of a Military Correction Board." Def.'s Mem. at 8. Defendant relies primarily on two D.C. Circuit decisions in support of his argument, *Piersall v. Winter*, 435 F.3d 319 (D.C. Cir. 2006), and *Brannum v. Lake*, 311 F.3d 1127 (D.C. Cir. 2002). Plaintiff finds no support in those decisions for Defendant's broad and far-reaching proposition.

The plaintiff in *Piersall* was found, pursuant to non-judicial punishment proceedings under Article 15 ("Captain's Mast"), to have been derelict in the performance of his duties. 435 F.3d at 320. As punishment, the Navy directed that a letter of reprimand be placed in the plaintiff's service

10

record.  *Id*.  The plaintiff unsuccessfully appealed the reprimand to the next higher authority, and then sought relief from the Board for Correction of Naval Records.  *Id*.

The plaintiff petitioned the Board to reverse the effects of his non-judicial punishment by expunging from his record "both the mast and the letter of reprimand on the ground that the mast was invalid because he had not been afforded an opportunity to refuse non-judicial punishment." *Id*. at 320-21.  The Board denied the plaintiff's application for relief, and he then filed suit in this Court, claiming the Board's decision was arbitrary, capricious, unsupported by substantial evidence, and contrary to law.  *Id*.  The defendant moved to dismiss for lack of subject matter jurisdiction for failure to state a claim.  *Id*.  The defendant also moved for dismissal for lack of subject matter jurisdiction.  *Id*. The Court, relying on *Brannum*, dismissed the plaintiff's claim as barred by the justiciability doctrine of *Feres v. United States*, 340 U.S. 135 (1950), because the plaintiff's claim "did not involve a challenge to military jurisdiction."  *Id*.

The D.C. Circuit reversed, finding the plaintiff's claims justiciable. The D.C. Circuit concluded, "[w]e are aware of no reason … to reconsider the well-settled rule that the decisions of boards for correction of military records are subject to review under the APA."  *Id*. at 323-24.  In rejecting the defendant's argument that judicial review would offend the U.S. Supreme Court's decision in *Schlesinger v. Councilman*, 420 U.S. 738 (1975), which the defendant claimed establishes a "general prohibition … against Article III courts interfering in the military justice system," the D.C. Circuit noted that the plaintiff's "challenge to the decision of the Board, however, is not a request for review of Admiral Konetzni's decision imposing non-judicial punishment, much less a request for review of the judgment of a military court." *Id*. at 324.

*Brannum*, the second case principally relied on by Defendant, likewise provides no support for Defendant's argument that Plaintiff's claims are non-justiciable or otherwise non-reviewable. *Brannum* involved allegations by the plaintiff that he was unlawfully recalled to active duty for purposes of punishment under the UCMJ. 311 F.3d at 1128. The plaintiff sought damages and injunctive relief vacating the punishment he was given under the UCMJ. *Id*. The Court dismissed the plaintiff's claims for lack of subject matter jurisdiction under the *Feres* doctrine. *Id*. at 1129.

The D.C. Circuit reversed as to the plaintiff's jurisdictional claim for equitable relief. *Id*. In so ruling, the court stated, "[w]hile we think it clear that at least some equitable claims relating to military service are not barred by the *Feres* doctrine, this case does not require us to ascertain *Feres's* exact bounds. Here Brannum asserted that his due process and other rights were violated by the military taking actions against him in excess of its jurisdiction under the Uniform Code. This jurisdictional claim falls squarely within the Supreme Court's decision in *Schlesinger v. Councilman*, 420 U.S. 738, 43 L. Ed. 2d 591, 95 S. Ct. 1300 (1975). … In light of *Schlesinger*, the *Feres* doctrine cannot preclude equitable suits challenging military jurisdiction under the Uniform Code…." *Id*. at 1130.

Defendant appears to be relying on *Brannum's* affirmation of this Court's dismissal of the plaintiff's non-equitable claims. In that regard, the D.C. Circuit relied on *Schlesinger's* holding that "[t]he acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise." *Id*. (Citations omitted.)

Nothing in *Piersall* or *Brannum* supports Defendant's argument. Indeed, the decisions strongly support judicial review of the instant case. As in *Pearsall*, Plaintiff does ask this Court to interject itself unduly into military affairs by reviewing General Keane's decision to award him a

letter of reprimand. He merely asks this Court to review, under the deferential APA standard, the DASBEB's denial of his application to remove the LOR from his record.

Defendant's reliance on *Brannum* is misplaced because Plaintiff was not charged with any offense under the UCMJ. He was not subject to non-judicial proceedings under Article 15, UCMJ. The LOR given to Plaintiff was not the result of, and did not result in, any judicial or non-judicial punitive actions. He lost no rank or pay, was not given extra duty, and suffered no deprivations of liberty. Administrative reprimands have nothing to do with military justice, a term of art restricted to actions brought under the UCMJ. Defendant's argument, and the cases he relies on to support it, are inapposite.

Defendant next argues that the *Feres* doctrine should be used as a tool of statutory construction to limit review of military personnel decisions under the APA. Def.'s Mem. at 11-15. As Defendant correctly notes, however, "…the United States District Court for the District of Columbia has interpreted Darby to prevent the court from imposing an exhaustion requirement on claims brought under the APA and not first appealed to the ABCMR." Def.'s Mem. at 15. Defendant maintains, however, that "the *Feres* doctrine, combined with the purely military nature of determinations by DASEB … strongly counsel for review by the ABCMR before resort to judicial review." *Id.*

Defendant's argument is founded in significant measure on his misunderstanding of the role of the DASEB in appeals against the filing of unfavorable information in an officer's OMPF. At page 11 of his memorandum, Defendant quotes from Chapter 6-3(a) of Army Regulation 600-37, which addresses the DASEB's role in determining whether unfavorable information should be made part of an officer's OMPF. In Plaintiff's case, the determination to file the unfavorable

information was made by General Keane, not the DASEB. The DASEB's only role in this case was to review Plaintiff's application to remove the LOR from his personnel file, a function comparable to that of the ABCMR. Defendant's arguments therefore are misplaced.

The cases relied on by Defendant in urging this Court to use *Feres* doctrine considerations to bar review do not support his argument. Two cases relied on by Defendant were decided before *Darby* and should be deemed overruled by *Darby*. *See* e.*g*., *Sohm v. Fowler*, 365 F.2d 915 (D.C. Cir. 1966); and *Williams v. Sec'y of the Navy*, 787 F.2d 552 (Fed. Cir. 1986). A post-*Darby* case relied on by Defendant, *Dowds v. Bush*, 792 F. Supp. 1289 (D.D.C. 1992), which required exhaustion of remedies before the military records correction boards, was reversed on appeal and remanded to the district court. *See Dowds v. Clinton*, 1994 U.S. App. LEXIS 4510 (D.C. Cir. Mar. 9, 1994) (unpublished disposition).

The nature of Plaintiff's claims strongly support review by this Court. Plaintiff presented to the DASEB clear and convincing evidence that the Army did not follow its own regulations in issuing the LOR, in its initial delay of his promotion, in its subsequent delays of his promotion. Plaintiff also provided clear and convincing evidence to the DASEB that the LOR was erroneous, unjust, and factually inaccurate.

Plaintiff's challenges involve allegations that the Army violated federal statutes, Army regulations, and his right to due process of law under the Fifth Amendment to the U.S. Constitution. The D.C. Circuit has noted that "courts have shown no hesitation to review cases in which a violation of the Constitution, statutes, or regulations is alleged. It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. The military departments enjoy no

14

immunity from this proscription. It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency. The logic of these cases derives from the self-evident proposition that the Government must obey its own laws." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) (internal citations omitted).

Defendant's motion to dismiss is founded on erroneous argument and an incomplete review of the applicable law. This Court should deny Plaintiff's motion to dismiss.

## 2. <u>VENUE IS PROPER IN THE DISTRICT OF COLUMBIA</u>

Venue for this action is established by 28 U.S.C. § 1391(e): "A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party."  Plaintiff asserts jurisdiction in this Court under 28 U.S.C. § 1391(e)(1). If the defendant resides in the District of Columbia, no further analysis is required.

Defendant's argument for dismissal for lack of venue or for transfer to the U.S. District Court for the Eastern District of Virginia is premised on a recent decision of this Court, *Saran v. Harvey*, *et al.*, 2005 U.S. Dist. LEXIS 8908 (D.D.C. May 9, 2005).

Defendant, in effect, asks this Court to overrule the significant line of cases holding that officers and agencies of the United States can have more than one residence, and venue can properly lie in the District of Columbia, when the officer or agency performs a significant amount of his or her official duties in the in the District of Columbia. *See, e.g., Bartman v. Cheney*, 827 F. Supp. 1, 1 (D.D.C. 1993). Defendant's argument, if accepted, would have far-reaching consequences for the operations of this Court and the Eastern District of Virginia.

*Saran* involved an action against the Secretary of the Army based on claims made under Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Age Discrimination in Employment Act ("ADEA"). 2005 U.S. Dist. LEXIS *2. She alleged that she was discriminated against while employed with the Department of Army in Ankara, Turkey. Defendants argued that venue in this Court was improper and the case should be transferred to the Eastern District of Virginia. *Id.*, at *4. The Court considered the venue question under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391. *Id.*, at *5.

Addressing venue under 28 U.S.C. § 1391(e), the Court stated, "[u]nder that provision, venue is appropriate where the defendant resides, a substantial part of the events occurred, or the plaintiff resides." *Id.*, at *6. According to the Court, "the District of Columbia is not the appropriate venue under any of these situations. The Secretary of the Army resides in Arlington, VA. Furthermore, none of the events giving rise to plaintiff's claims occurred in Washington, DC, and plaintiff does not reside in the District." *Id.* (Internal citations omitted).

16

In so concluding, the Court relied on two decisions, *Chance v. Dewitt Army Cmty Ctr.*, 2002 U.S. Dist. LEXIS 10575, 2002 WL 10255029, *1 (D.D.C. Jan. 28, 2002), and *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94-95 (D.D.C. 1983), in which it was determined, respectively, that the Secretary of the Army is located at the Pentagon, in Virginia, for venue purposes, and despite a District of Columbia mailing address, the National Guard Bureau is also located at the Pentagon, in Virginia.

In *Saran*, however, the Court failed to consider the greater weight of precedent holding that the secretaries of the military departments reside in the District of Columbia because a significant amount of their duties are carried out there. In *Doe v. Casey*, 601 F. Supp. 581 (D.D.C. 1985), the Court rejected the defendant's argument that venue was improper in the District of Columbia because the defendant, Director of the Central Intelligence Agency, officially resided in Virginia. *Id*. at 584. In rejecting the defendant's argument, the Court stated, "[i]n determining the residence of a public official sued in his official capacity, the test of residence is where official duties are performed. When, as here, Director Casey performs a substantial portion of his duties in the District, although a larger portion in Virginia, it is appropriate to conclude that the District of Columbia is a proper place for venue." *Id*. at 585. The Court rejected the defendant's argument on that basis.

In *Bartman v. Cheney*, 827 F. Supp. 1 (D.D.C. 1993), the Court faced a similar argument from the defendant, in which he argued that the Secretary of Defense resided in Virginia, not the District of Columbia. *Id*. at 3. Relying on *Doe*, the Court rejected the defendant's argument, stating, "[o]fficers and agencies of the United States can have more than one residence, and venue can properly lie in more than one jurisdiction. When an officer or agency head performs a

'significant amount' of his or her official duties in the District of Columbia, the District of Columbia is a proper place for venue." *Id.* (Citations omitted.)

A more recent challenge to District of Columbia venue by a defendant occurred in *Smith v. Dalton*, 927 F. Supp. 1 (D.D.C. 1996). There, the plaintiff sought judicial review of a decision of the Board for the Correction of Naval Records ("BCNR") denying the plaintiff's request to remove decisions of Navy promotion boards that failed to select him for promotion over a 5 year period. *Id.* at 2-3. The defendant argued that because his office and that of the BCNR were located in Virginia, venue was improper in the District of Columbia. *Id.* at 6.

In rejecting the defendant's argument, the Court noted, "[t]he Secereatry of the Navy is the head of the Department of the Navy and the President's principle advisor regarding Naval affairs. The Secretary maintains his offices in the District of Columbia and is actively involved in dealings with Congressional committees and District of Columbia agencies. Accordingly, the court concludes that these activities suffice to make venue proper in the District of Columbia." *Id.*

In support of its decision, the Court cited a line of cases in which "Courts have consistently allowed the Secretary of the Navy to be sued in the District of Columbia because he performs a significant amount of his official duties in this jurisdiction." *Id. See* n43 ("*See e.g.*, *Vietnam Veterans v. Sec. of the Navy,* 269 U.S. App. D.C. 35, 843 F.2d 528 (D.C. Cir. 1988); *Bozin v. Sec. of the Navy,* 657 F. Supp. 1463 (D.D.C. 1987); *Harley v. Sec. of the Navy,* 896 F. Supp. 29 (D.D.C. 1995); *GE Gov. v. United States,* 788 F. Supp. 581 (D.D.C. 1992); *Vietnam Veterans v. Sec. of the Navy,* 741 F. Supp. 1 (D.D.C. 1990); *Leslie & Elliott Co. v. Sec. of the Navy,* 732 F. Supp. 191 (D.D.C. 1990); and *Cerberonics v. Sec. of the Navy,* 1991 U.S. Dist. LEXIS 21638, 1991 WL 45738 mem. op. (D.D.C. 1991)." Many more cases could be added to that now-dated list, one

being *Jyachosky v. Winter*, 2006 U.S. Dist. LEXIS 44399, *12 (June 29, 2006), in which this Court reaffirmed its prior decisions holding venue proper in the District of Columbia where an officer or agency head performs a significant amount of his or her official duties in the District of Columbia.

In sum, the law of this Court is settled that the Secretary of the Army may be sued in this District in his official capacity because, for purposes of venue under 28 U.S.C. § 1391(e), he resides in the District of Columbia. As with the Secretary of the Navy, the Secretary of the Army reports to and advises the President on all Army matters, is accountable to Congress for all Army matters, and interacts with other District of Columbia agencies. Defendant's motion to dismiss or transfer for want of venue must be dismissed.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully submits that this Court should deny Defendant's motion to dismiss for failure to state a claim or to transfer to the Eastern District of Virginia.

Respectfully submitted,

/s/

Raymond J. Toney (NY0066)

The Law Office of Raymond J. Toney
34-16 30th Avenue, Third Floor
Astoria, NY 11103
Tel: 718-726-3656
Fax: 661-459-0476

David P. Sheldon (D.C. Bar # 446039)

The Law Offices of David P. Sheldon, PLLC
512 8th Street, S.E.
Washington, DC 20003
Tel: 202-546-9575
Fax: 202-546-0135

*Attorneys for Plaintiff*

September 21, 2006