UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MALCOLM BRUCE WESTCOTT,          :
                                 :
        Plaintiff,               :
                                 :
   v.                            :  Civil Action No. 06-0293 (JR)
                                 :
FRANCIS J. HARVEY, Secretary of  :
the Army,                        :
                                 :
        Defendant.               :

**MEMORANDUM ORDER**

Plaintiff Malcolm Bruce Westcott, a retired Army Reserve Colonel, seeks judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, of a final decision of the Department of the Army Suitability Evaluation Board ("DASEB"). Colonel Westcott alleges that DASEB's denial of his application to have a letter of reprimand removed from his official military personnel file violated certain Army regulations, federal statutes, and the U.S. Constitution. The Secretary of the Army moves to dismiss [9] for failure to state a claim and for improper venue, or for transfer to the Eastern District of Virginia. The motion is **denied**, for the reasons set forth below.

**Background**[1]

Colonel Westcott lives in McDonough, Georgia. While serving as Division Chief, Office of the Chief of the Army

---

[1] The facts set forth in plaintiff's Complaint are taken as true for purposes of this motion.

Reserve, he referred an allegation against a subordinate officer to the Deputy Chief, Army Reserve for an informal investigation pursuant to Army Regulation ("AR") 15-6. The conclusions of the investigation into the subordinate officer's behavior were summarized in a Letter of Reprimand ("MOR"), which substantiated the allegations of unprofessional conduct toward women. As the offending officer's Senior Rater, Colonel Westcott signed an Officer Effectiveness Report ("OER") on April 23, 1999, recommending the officer's removal from active duty. Thereafter, the offending officer submitted a complaint to the Department of Defense Inspector General ("DODIG") complaining that Colonel Westcott violated the Military Whistleblower Protection Act in his treatment of the officer, and the DODIG opened an investigation into the allegation against Colonel Westcott.

On May 25, 1999, the Army Chief of Staff selected Colonel Westcott for promotion to Deputy Chief, Army Reserve, a Brigadier General billet. On June 29, 1999, the U.S. Army Reserve General Officer Promotion Selection Board considered and selected COL Westcott for the same promotion. On September 22, 1999, the Secretary of the Army sent the selections of the promotion board to the U.S. Senate for confirmation, but he withheld Colonel Westcott's nomination from the list. The other officers on the promotion list were confirmed by the Senate on November 5, 1999.

On November 15, 1999, Colonel Westcott was informed of the investigators' determination that the offending officer's complaint against him was without merit, and that his actions in recommending the investigation and removal of the subordinate officer had been appropriate. Not long after that notification, however, the Army informed Colonel Westcott that a second allegation, made in a June 1, 1999, hotline phone call, suggested that he and others had engaged in misconduct in the execution of their duties. That allegation was referred to appropriate bodies for investigation, and, in the summer of 1999, the Army Criminal Investigation Division ("CID") initiated an investigation.

The CID investigation focused on Colonel Westcott's superior, Major General Baratz; Colonel Westcott was identified merely as a witness. After receiving assurances that he was not a subject of the investigation, Colonel Westcott agreed to cooperate with investigators; he was questioned twice, in October 1999, by CID investigators. Upon completing its investigation, CID referred the matter to the United States Attorney. Colonel Westcott twice testified before a federal grand jury in connection with a subsequent investigation by the United States Attorney's Office. The U.S. Attorney's Office informed Colonel Westcott, again, that he was not a subject of its investigation. The grand jury did not return an indictment against General Baratz.

Colonel Westcott was informed in March, 2000 that, while General Baratz was the focus of its investigation, the Department of the Army Inspector General ("DAIG") was reviewing the case for possible investigative action against him. Shortly thereafter, Colonel Westcott and his military counsel made the first of several inquiries into the status of the possible investigation, requesting prompt resolution of the matter, since, in the meantime, plaintiff's promotion to Brigadier General was on hold.[2] It was not until February 7, 2001, however, that the DAIG issued a Directive for Investigation authorizing investigators to inquire into allegations about Colonel Westcott. The Directive noted that, although the CID investigation did not establish evidence of Colonel Westcott's wrongdoing, two allegations warranted further investigation by the DAIG: (1) whether Colonel Westcott had been negligent in his duties as a Contracting Officer Technical Representative, and (2) whether he had committed ethical violations in contracting and related activities regarding a private defense contractor. Colonel Westcott was not informed of the specific factual allegations against him before a 6-hour interview with DAIG investigators on April 23, 2001.

---

[2] At some point, Colonel Westcott discovered that the June 1, 1999 complaint was the reason for the Secretary's decision to withhold his nomination for promotion. [1] ¶ 94.

Ultimately, the DAIG investigation substantiated only the first of the two allegations.  Colonel Westcott obtained the DAIG's Report of Investigation ("ROI") pursuant to a Freedom of Information Act request, but the copy disclosed to him was highly redacted. [1] ¶ 32.  The ROI exhibit list suggested that the DAIG had relied "almost exclusively" on transcripts of testimony provided to CID investigators by 17 witnesses, but Colonel Westcott never learned the identities of these witnesses and was not given the transcripts of their testimony.  Id. ¶ 54.  (The redacted ROI given to Colonel Westcott did include redacted transcripts of DAIG interviews with three witnesses.)

The DAIG forwarded the ROI to General John M. Keane, the Army Vice Chief of Staff, who approved it on July 9, 2001. On October 19, 2001, General Keane issued a Memorandum of Reprimand ("MOR") based on the ROI for placement in Colonel Westcott's Official Military Personnel File ("OMPF").  No supporting documents were attached to the MOR, and the MOR did not suggest that Colonel Westcott had reviewed the evidence upon which the MOR was based.  On April 5, 2002, Colonel Westcott responded to the MOR in a detailed rebuttal, submitted with several sworn statements made by people familiar with the case. He requested that the Army refrain from including the MOR in his OMPF, claiming that it reflected several errors attributable to the DAIG ROI.

The ROI and the subsequent MOR had to do with Colonel Westcott's involvement in negotiating a contract with a private company, SY Technology. At the direction of General Baratz, Colonel Westcott pursued contractual relations with SY Technology aimed at obtaining the company's support for certain of General Baratz's Army Reserve initiatives. Active Army officials informed Colonel Westcott that the type of contractor support General Baratz sought was available only through the addition of a "task order" to a pre-existing contract with the U.S. Army Space Command, which had been competitively awarded to SY Technology by the Active Army. The Army Reserve Office of the Chief, after coordinating with Contracting Officer Max Delgado at Army Space Command, submitted a task order to the Army Space Command indicating that SY Technology should be tasked to "support the horizontal and vertical integration necessary to satisfy the Chief, Army Reserve's missions, goals and objectives in the force management area." [1] ¶ 82. In response to this task order, SY Technology submitted a Task Order Plan ("TOP") to the Office of the Chief, Army Reserve; the TOP was approved by Colonel Westcott, and the corresponding expenditures between September 1997 and September 1998 were approved by General Baratz. In May 1998, General Baratz retired from the Army Reserve; two months later, he began working for SY Technology.

The three specific findings substantiated by the DAIG's investigation against Colonel Westcott were that (1) he helped obtain a task order for SY Technology that benefitted General Baratz after he left the Army Reserve, (2) he was negligent in failing to reference a Senior Leadership Training Program involving General Baratz and SY Technology in a quarterly evaluation, and (3) by allowing SY Technology to draft its own performance appraisals, he undermined the reliability of the awards fee board system.

On February 1, 2003, Colonel Westcott voluntarily resigned from the Army Reserve.  On June 18, 2004, he applied to DASEB for the removal of the MOR from his OMPF.  DASEB denied the request on November 5, 2004, without stating any reasons.  Colonel Westcott elected not to seek relief from the Army Board for the Correction of Military Records ("ABCMR").

Instead, Colonel Westcott filed this complaint, on February 17, 2006, alleging that the Army, through the DASEB's refusal to remove the MOR from Westcott's OMPF, committed five distinct violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.  He alleges that the unfavorable report was included in his OMPF before he was given an opportunity to respond it, in violation A.R. 600-37 (Count I); that the Army failed to notify him in writing of the delay in his promotion, in violation of 10 U.S.C. § 14311 and A.R. 600-8-29 (Count II); that

the Army had no basis under 10 U.S.C. § 14311 or A.R. 600-8-29 for delaying his promotion (Count III); that the Army failed to resolve his promotion status within eighteen months as required by 10 U.S.C. § 14311 and A.R. 600-8-29 (Count IV); that his right to due process of law was violated when the Army failed to provide timely notice of, and an opportunity to respond to, adverse information (Count V); and that there was insufficient evidence to support the factual findings in the MOR (Count VI). The DASEB's failure to respond to these arguments and remedy these violations, Colonel Westcott alleges, was arbitrary, capricious, and unsupported by substantial evidence, in violation of the APA.

Colonel Westcott asks this court to order the Secretary of the Army to expunge from his military record (1) the MOR and all references to adverse action taken against plaintiff, (2) all documents referencing the DAIG investigation and the ROI, and (3) all documents pertaining to plaintiff's removal from the Brigadier General Promotion List.  In addition, plaintiff asks the court to award costs and attorney fees incurred in pursuing this action.

**Analysis**

<u>Justiciability</u>

The parties agree that, under <u>Darby v. Cisneros</u>, 509 U.S. 137, 154 (U.S. 1993), Colonel Westcott was not required to exhaust administrative remedies before the Army Board of Correction for Military Records before seeking APA review ("appeal to superior agency authority is a prerequisite to judicial review [under the APA] only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review"). That would seem to end the inquiry, since "the BCMR enabling statute and its implementing regulation are devoid of any language that mandates exhaustion of administrative remedies prior to judicial review." <u>Wilhelm v. Caldera</u>, 90 F. Supp. 2d. 3, 7 (D.D.C. 2000). The Secretary nevertheless maintains that Colonel Westcott's claims are non-justiciable, noting that "[j]usticiability is a separate and distinct requirement from exhaustion." [15] at 1.

The Secretary's argument, as I understand it, is that the controlling case law prohibits judicial review of military decisions concerning <u>discipline</u> unless such decisions have been reviewed by a Military Correction Board. [11] at 8. In support of his argument, the Secretary highlights the distinction the Court of Appeals has recognized between service member claims

- 9 -

seeking retroactive promotion, review of a court martial, or review of an Admiral's decision, on the one hand, and, on the other hand, "more modest" claims seeking APA review of decisions made by a military board of correction: the former are non-justiciable under the Feres doctrine, the latter are reviewable under the APA.  Kreis v. Secretary of the Air Force, 866 F.2d 1508 (D.C. Cir. 1989); Piersal v. Winter, 435 F.3d 319 (D.C. Cir. 2006); Brannum v. Lake, 311 F.3d 112 (D.C. Cir. 2002); Feres v. United States, 340 U.S. 134, 139-40. (1950).

The problem with defendant's argument is that review of the DASEB's refusal to expunge unfavorable records from an OMPF falls plainly into the latter of these two categories or, at least, that the extent to which such a review may bleed into a review of discipline cannot be determined on this record. Colonel Westcott has not asked for judicial review of General Keane's decision, but for a ruling on his claim that the DASEB's denial of his application to remove the LOR was arbitrary and capricious.  As Colonel Westcott notes, the procedures of the DASEB are similar to those of the ABCMR.  [13] at 8.  "The process is administrative and non-adversarial in nature."  Army Regulation 600-37 Chapter 7-2(d)(1).  Moreover, while the DASEB is authorized to determine whether unfavorable material should be inserted into an officer's OMPF, A.R. 600-37 Chapter 6-3(a), it did not do so in this case.  That decision was made by General

Keane.  What the DASEB did was to review Colonel Westcott's application to <u>remove</u> the MOR.

I need at least to review Colonel Westcott's application to the DASEB, the DASEB decision, and the parties' arguments on the merits before I can determine whether the requested APA review runs afoul of the <u>Feres</u> doctrine or exceeds the boundaries of proper APA review.  The cases suggest that it does neither.  <u>See e.g.</u>, <u>Darby</u>, 509 U.S. at 154; <u>Wilhelm</u>, 90 F. Supp. 2d. at 7; <u>Nation v. Dalton</u>, 107 F. Supp. 2d 37, 43, n4 (D.D.C. 2000) ("[t]here is no requirement that a records-correction claim first be presented for review to an appropriate Board").  If and when it is demonstrated that plaintiff's claims extend beyond those presented to the DASEB or would require judicial second-guessing of the decisions of Colonel Westcott's superiors or Army investigators, I will reconsider the matter.  At this point, since "[c]ourts are not free to impose an exhaustion requirement as a rule of judicial administration when the agency action has already become final" as it has here, defendant's motion to dismiss under Rule 12(b)(6) must be denied.  <u>Darby</u>, 509 U.S. at 154.

<u>Venue</u>

Defendant's motion to dismiss for improper venue under Rule 12(b)(3), or in the alternative to transfer to the Eastern District of Virginia, is more easily resolved.  Venue in the

District of Columbia is appropriate under 28 U.S.C. § 1391(e)[3] because the Secretary of the Army "performs a substantial portion of his duties" in the District.  Doe v. Casey, 601 F. Supp. 581 (D.D.C. 1985).  While it is true that the Secretary of the Army works in the Pentagon in Arlington, Virginia, "[o]fficers . . . of the United States can have more than one residence, and venue can properly lie in more than one jurisdiction.  When an officer or agency head performs a significant amount of his or her official duties in the District Columbia, the District of Columbia is a proper place for venue."  Bartman v. Cheney, 827 F. Supp. 1, 3 (D.D.C. 1993) (internal citations and quotation marks omitted); see also Smith v. Dalton, 927 F.Supp. 1, 6 (D.D.C. 1996).  While I acknowledge the lingering questions in this Circuit about venue in situations like this one[4], as a practical matter, the District of Columbia is no less convenient a forum than the Eastern District of Virginia for the parties before the court; defendant essentially admits as much in his motion to

---

[3] "A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under Colonelor of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides . . ."

[4] See Saran v. Harvey, et al., 2005 U.S. Dist. LEXIS 8908 (D.D.C. May 9, 2005); Chance v. Dewitt Army Cmty Ctr., 2002 U.S. Dist. LEXIS 10575, 2002 WL 10255029, *1 (D.D.C. Jan. 28, 2002); Donnell v. Nat'l Guard Bureau, 568 F.Supp. 93, 94 (D.D.C. 1983).

dismiss.  [9] at 18  ("[I]t is arguably convenient for officials or agencies based in the Pentagon to submit to a lawsuit in Washington, D.C.").  I therefore find that venue is appropriate in the District of Columbia under 28 U.S.C. § 1391(e).


                                  JAMES ROBERTSON
                           United States District Judge