IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MALCOLM BRUCE WESTCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-0293 (JR) |
| ) | |
| THE HONORABLE PETE GEREN, ) | |
| Acting Secretary of the Army ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This memorandum supports Defendant's motion for summary judgment. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law. The Administrative Record filed contemporaneously with this motion and Defendant's Statement of Material Facts Not in Genuine Dispute support this memorandum. Accordingly, Defendant requests that Plaintiff's Complaint be dismissed with prejudice.

**INTRODUCTION**

Plaintiff, Colonel Malcolm B. Westcott, was reprimanded by General John Keane, Vice Chief of Staff of the Army for negligence in administering contractual matters for the Army Reserve, with SY Technology, a government vendor. The Department of the Army investigation served as the basis of the reprimand. Plaintiff requests this Court to expunge from his Official Military Personnel File ("OMPF") a General Officer Memorandum of Reprimand ("GOMOR"), expunge all military records referencing a Department of the Army investigation and a Report of

Investigation ("ROI"), and remove all documents pertaining to Plaintiff's removal from the Brigadier General Promotion List (Plaintiff's Complaint, hereinafter "Compl." at 28 ¶¶ 1-3), to award litigation "costs" to Plaintiff (Compl. at 28 ¶ 4), and to grant Plaintiff attorney fees (Compl. at 28, ¶ 5).

## STANDARD OF REVIEW

**I.    Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. Id. at 247. The party moving for summary judgment need not prove the absence of an essential element of the non-moving party's case. Celotex, 477 U.S. at 325. "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." Id. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial or present some objective evidence that would enable the court to find an entitlement to relief. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Banks v. C & P Tel. Co., 802 F.2d 1416 (D.C. Cir. 1986).

"[T]he mere existence of some factual dispute between the parties will not defeat an

2

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  See Anderson, 477 U.S. at 247-248.  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).  It is well-settled that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 471 U.S. at 249-250.  "If the evidence is merely colorable, or is not significantly probative," or the record taken as a whole could not "lead a rational trier of fact to find for the non-moving party," summary judgment is proper." Id. at 249-50; Matsushita, 475 U.S. at 587.  In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**II.     APA Standard of Review**

Under the Administrative Procedures Act ("APA"), the Court will overturn an agency decision only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  An agency action is arbitrary and capricious if the agency has failed to follow procedure as required by law (5 U.S.C. §706(2)(D)), or has entirely failed to consider an important aspect of the problem.  See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983).  Review of the agency's decision is not de novo, it is limited to the administrative record that was before the agency.  See McDougall v. Widnall, 20 F. Supp.2d 78, 82 (D.D.C. 1998) (citations omitted).

To prevail in this Court, the plaintiff must "overcome the 'strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'" Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997) (citation omitted). It is well-settled that to rebut this presumption, a plaintiff must establish through "cogent and clearly convincing evidence" that the Agency's findings were arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulations. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citation omitted); McDougall, 20 F. Supp.2d at 82; Walker v. Shannon, 848 F. Supp. 250, 254 (D.D.C. 1994). Only the most egregious agency decisions do not satisfy this very deferential standard of review. Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1515 (D.C. Cir. 1989).

"[T]he function of this Court is not to serve as a super correction board that reweighs the evidence." Charette v. Walker, 996 F. Supp 43, 50 (D.D.C. 1998). In reviewing agency action under the APA's arbitrary and capricious standard, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." MD Pharm., Inc. v. Drug Enforcement Admin., 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting Motor Vehicle Mfrs. Ass'n., 463 U.S. at 43). The requirement that an agency provide a rational explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge. A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (citation omitted).

4

**ARGUMENT**

The Plaintiff brings this suit pursuant to 28 U.S.C. § 1331 (Federal Question) and 5 U.S.C. §§ 701 - 706 (Administrative Procedures Act).  As a preliminary matter, it is important to highlight the limited nature of the Plaintiff's claims.  As this Court ruled in its Memorandum Order dated March 29, 2007, the Plaintiff's suit challenges only the November 5, 2004, Department of the Army Suitability Evaluation Board ("DASEB") decision denying the Plaintiff's request to remove a GOMOR from his OMPF.  Memorandum Opinion, p. 10 ("Colonel Westcott has not asked for judicial review of General Keane's decision, but for a ruling on his claim that the DASEB's denial of his application to remove the LOR was arbitrary and capricious.").  The conclusion that the only agency decision being challenged by the Plaintiff is the DASEB decision is inescapable given his reference to and reliance on the DASEB decision in each of the six counts raised in his complaint.  See Compl, ¶¶ 110-11, 119-20, 128-29, 146-47, 163-64, 214-15.

**I.  Only One of the Plaintiff's Three Substantive Prayers for Relief is Properly Before this Court**

The DASEB is governed by Army Regulation 600-37, Unfavorable Information.  The DASEB performs two functions: 1) to determine whether unfavorable information should be filed in a soldier's OMPF, and 2) to determine whether to remove or transfer information from a soldier's OMPF once it has been placed there by a competent authority.  Army Regulation ("Army Reg.") 600-37, ¶¶ 6-3(a), 7-2.  The authority of the DASEB is limited to placing material into or removing material from a soldier's OMPF.  See Army Reg. 600-37, Chapters 6-7.  The Plaintiff's sole petition to the DASEB was to remove the GOMOR and all related unfavorable

information from his OMPF.  AR 003.[1]  In contrast, the Plaintiff's complaint in this Court requests that the Court order the Army "to expunge from Plaintiff's military record the MOR issued by MG Keane and any other documents containing references to adverse actions taken against Plaintiff;" "expunge from Plaintiff's military record all documents referencing the DAIG investigation and the ROI," and "expunge from Plaintiff's record all documents pertaining to his removal from the Brigadier General Promotion List."  Compl., Prayer for Relief, ¶¶ (1)-(3).

The Plaintiff asks the Court to "expunge from Plaintiff's military record all documents referencing the DAIG investigation and the ROI".  Compl., Prayer for Relief, ¶ (2).  The only documents in the Plaintiff's OMPF that reference the DAIG investigation are the GOMOR, GOMOR filing decision, GOMOR rebuttal materials, and the Plaintiff's Memorandum to the DASEB.  AR 179-212, 291.  With the exception of the Memorandum to the DASEB, all of these documents are covered by the Plaintiff's first prayer for relief and the reference to them in his second prayer for relief is cumulative.  Additionally, while the Plaintiff's submission to the DASEB discusses his objections to the Department of the Army Inspector General ("DAIG") ROI, he did not ask the DASEB to remove "documents referencing the DAIG Investigation and the ROI" from his OMPF.  AR 003.  It is well-settled that a plaintiff cannot raise an issue to a District Court if he failed to first raise it before the Agency whose decision he is challenging.  United States v. L.A. Tucker Truck Lines, 344 U.S. 33 (1952).  As the Plaintiff did not raise this issue to the DASEB, he is precluded from asserting it in this Court.

Finally, the DASEB does not have the authority to remove the DAIG Investigation and

---

[1] "A.R." refers to the Administrative Record, followed by a page number truncated to three digits for ease of reference; *i.e.*, Administrative Record page 3 is cited as "A.R. 003"

ROI from the Plaintiff's file. Army Regulation 600-37 provides that the DASEB's authority to remove documents in a soldier's OMPF "does not include documents that have their own regulatory appeal authority. . . ." Army Reg. 600-37, ¶ 7-2a. DAIG investigations and ROIs are governed by Army Regulation 20-1, Inspector General Activities and Procedures. Army Regulation 20-1 contains provisions whereby personnel may seek amendment of DAIG records including "matters of opinion, judgment, or conclusion." Army Reg. 20-1, ¶ 3-8. Furthermore, since the DAIG ROI is not filed in the Plaintiff's OMPF, the DASEB could not have removed it as its authority is limited to those records in an applicant's OMPF.[2] Army Reg. 600-37, ¶ 7-2.

      The Plaintiff's next Prayer for Relief is that the Court "expunge ... all documents pertaining to his removal from the Brigadier General Promotion List." Compl., Prayer for Relief, ¶ (3). There are no documents pertaining to the Appellant's removal from the Brigadier General Promotion List in the Plaintiff's OMPF. AR 046-331. As such, it is not apparent which documents the Plaintiff is seeking to have removed from his OMPF pursuant to this paragraph of his prayer for relief. Consequently, the Defendant submits that this claim is moot. In the absence of documents pertaining to his removal from the promotion list in his OMPF, there is no relief that a Court could fashion to remedy his complaint.

      Additionally, the Plaintiff did not ask the DASEB to "expunge ... all documents pertaining to his removal from the Brigadier General Promotion List." Compare AR 003 with

---

[2] It is undisputed that pursuant to Army Regulation 15-185, the Army Board for Correction of Military Records ("ABCMR") has the authority to expunge the Plaintiff's GOMOR and related documents and the DAIG ROI regardless of whether they are filed in the Plaintiff's OMPF. The Plaintiff, however, chose not to make an application to the ABCMR and instead filed suit in this Court. See Compl., ¶ 10.

Compl., Prayer for Relief, ¶ (3). As set out above, it is well-settled that a plaintiff cannot raise an issue to a District Court if he failed to first raise it before the Agency whose decision he is challenging. L.A. Tucker Truck Lines, 344 U.S. 33 (1952). As the Plaintiff did not raise this issue to the DASEB, he is precluded from asserting it in this Court.

The Plaintiff's only substantive prayer for relief that is properly before the Court is his request that the GOMOR and related information be expunged from his records. Compl., Prayer for Relief, ¶ (1). The DASEB had the authority to remove the GOMOR and related unfavorable information from the Plaintiff's OMPF, and the Plaintiff did indeed request as much.

II.     **The Defendant is Entitled to Summary Judgment on Each of the Six Counts in Plaintiff's Complaint**

   A.   **Counts II, III, and IV of the Plaintiff's Complaint Address Issues Beyond the Authority of and Not Raised to the DASEB**

Counts II, III, and IV of the Plaintiff's complaint allege errors by the Army with regard to the Plaintiff's promotion delay. While the Plaintiff discussed his allegations that the delay of his promotion was improper in his submission to the DASEB, see AR 008, the only relief he requested was that the DASEB remove the GOMOR and related unfavorable information from his file. AR 003. As established by Army Regulation 600-37 and as specifically held by the DASEB, "the applicant's contentions regarding the delay of the applicant's promotion are beyond the scope of this board and therefore without merit in regards to the requested action (removal of GOMOR from an OMPF)." AR 009. At the conclusion of each of his six counts, the Plaintiff states "[t]he DASEB did not address this allegation in its decision memorandum." The Plaintiff neglects to mention that the DASEB decision memorandum informs him that he is "authorized to request a copy of the DASEB case summary. This document will provide you

8

information on how the Board reached their decision." AR 002. That the Plaintiff apparently chose not to avail himself of the opportunity to obtain the case summary and in so doing gain a greater understanding of the DASEB's decision does not lend any weight to his argument that the DASEB was arbitrary and capricious.

The Plaintiff cannot maintain Counts II, III, and IV of his complaint in this Court. He did not request relief from the DASEB regarding the promotion delay thus waiving review of that claim in this Court. See AR 003. More importantly, it is irrefutable that the DASEB's authority did not extend to the issues concerning the promotion delay. Even if this Court were to find that the allegations regarding the promotion delay were properly before this Court despite the Plaintiff's failure to properly raise them to the Agency, a finding the Army urges strongly against, it is not arbitrary or capricious for an Agency board to refuse to consider allegations that fall outside of its purview. Finally, there are no references to the Plaintiff's promotion delay or his removal from the promotion list in his OMPF. See AR 046-331. The relief that can be granted by the DASEB is limited to documents in a soldier's OMPF. See Army Reg. 600-37, Chapters 6-7. Furthermore, since the Plaintiff's requested relief regarding these three counts is the removal of documents referencing his promotion delay from his OMPF and there are no such documents, these counts must also fail as moot.

    B.   **The Plaintiff's Challenge to the DAIG Investigation in Count V is Meritless**

In Count V, the Plaintiff alleges that the Army violated his due process rights by not providing him notice and an opportunity to respond to adverse information during the course of the DAIG investigation. This allegation fails for numerous reasons. Although the Plaintiff mentioned this allegation to the DASEB, he did not and indeed could not receive any relief from

the DASEB regarding the DAIG investigation as: 1) the investigation was not filed in his OMPF, 2) the investigation is subject to the appeal procedures of Army Regulation 20-1 and therefore specifically exempted from Army Regulation 600-37, 3) he did not provide a copy of the DAIG ROI to the DASEB, and 4) the only relief he requested from the DASEB was the removal of the GOMOR and related unfavorable information from his OMPF.  See AR 003.  Putting aside the jurisdictional bars to the DASEB reviewing any allegation regarding the DAIG investigation, it is illogical for the Plaintiff to challenge the DAIG investigation to the DASEB without providing it a copy of the investigation.  By not providing a copy of the DAIG ROI, the Plaintiff deprived the DASEB of the very documents he was challenging.  The DASEB cannot merely take the Plaintiff's word; they must have something against which to measure and evaluate his allegations.  He failed to provide a copy of the DAIG ROI to the DASEB even though it was in his possession when he applied.  See AR 008, 184 n.1.

Notwithstanding the many reasons why the DASEB could not have provided the Plaintiff the relief he sought, it specifically addressed his claim in its decision summary.  The DASEB stated:

> The applicant specifically contends: 1. His procedural rights under AR 20-1 were violated due to failure to inform him of the allegations in a timely manner.  The DASEB finds this contention to be without merit to this appeal.  The Board notes that the GOMOR states that it is based on a DAIG ROI substantiated allegation that he performed his duties [im]properly as a COTR.  The Board further notes the applicant failed to provide a copy or redacted copy of the DAIG ROI.  Nevertheless, this contention pertains to the DAIG investigation process rather than the GOMOR process as regulated under AR 600-37.  The evidence neither disproves the basis of the DAIG ROI finding nor substantiates the GOMOR is untrue or was issued unjustly.

AR 008.  The DASEB properly concluded that the crux of this complaint was the DAIG

investigation. The Plaintiff should have addressed complaints regarding the DAIG ROI to the DAIG through Army Regulation 20-1. See Army Reg. 20-1, ¶ 3-8. The DASEB went on to find that his allegation was without merit and that the evidence he provided did not disprove the basis of the ROI or the GOMOR. Id. Therefore, there was insufficient proof to warrant removing the GOMOR from his OMPF.

It bears mention that the Plaintiff's allegation regarding the violation of his rights pursuant to Army Regulation 20-1 fails on its own terms. Although Plaintiff conspicuously omits references to important dates when discussing the alleged violations of his rights in Count V, the timeline set out earlier in his Complaint establishes that the Army fully complied with its regulation. The Army was in full compliance even under the Plaintiff's version of events and his characterization of the DAIG process, to include his reference to a version of Army Regulation 20-1 that was not published until after the contested investigation had been completed.

The Plaintiff claims that he had a right to be notified "orally or in writing" of unfavorable information before the DAIG investigation was completed. Compl. ¶ 149. He further contends that under the newer version of the regulation, not in effect at the time, that

> [t]he individual has a right to know of the unfavorable information during the IG inquiry or investigation. The IG will orally notify the person concerned (notification) of the allegations and interview the subject or suspect before the IG inquiry or investigation is completed. The IG will provide the person an opportunity to comment on the unfavorable information during the interview process.

Compl. ¶ 150 (emphasis in original). A review of the facts establish that the DAIG complied with these requirements to the letter. In March 2000, DAIG informed the Plaintiff that it was reviewing its information with a view toward possible investigative action against him. Compl.,

¶ 36. In August, 2000, DAIG informed the Plaintiff that it was going to conduct a preliminary investigation into allegations against him. AR 210. Subsequently, the Plaintiff was notified that the DAIG had completed its preliminary investigation and undertaken a full investigation against him. Compl., ¶ 47. On February 7, 2001, General Keane signed the Directive of Investigation. Compl., ¶ 41. On April 23, 2001, the Plaintiff was interviewed by a DAIG investigator, informed of the allegations against him, and provided an opportunity to respond. Compl., ¶¶ 49-51. On July 9, 2001, the completed ROI was approved by General Keane. Compl., ¶ 58. This timeline clearly establishes that the Army complied with the governing regulation as characterized by the Plaintiff. The Plaintiff was informed of the investigation more than ten months before it was completed. He was interviewed more than two and one half months before the investigation was completed. His allegation that his procedural rights were violated by the DAIG is meritless.

    C.    **The DASEB Denial of the Plaintiff's Request to Remove the GOMOR from His OMPF Was Correct and Well-Reasoned**

The only Counts properly before this Court are Counts I and VI. As established above, the remaining Counts fail because, among other reasons, they were waived by not being properly raised to the DASEB. Both Counts I and VI address the GOMOR that is filed in Plaintiff's OMPF.

In Count I, the Plaintiff alleges that "[t]he Army Violated COL Westcott's Procedural Rights under AR 600-37." Compl. The gravamen of the Plaintiff's allegation is that he was not given proper notice and an opportunity to respond to the GOMOR before it was filed. This allegation is baseless and contrary to the Plaintiff's own version of events. The Plaintiff is

12

correct that Army Regulation 600-37 provides for notice and an opportunity to respond before unfavorable information is filed in a soldier's OMPF. In this case, however, the Plaintiff received all due process in accordance with the regulation.

> The GOMOR that the Plaintiff received begins:
>
> On 9 July 2001, I approved a Department of the Army Inspector General Report of Investigation that substantiated an allegation that you failed to perform your duties properly as a contracting officer's technical representative (COTR). You are hereby reprimanded for your negligence, which gave rise to an appearance that your personal interests clouded your professional diligence and judgment.

AR 179. This opening paragraph leaves no doubt that the reprimand is based on the DAIG investigation that was approved on July 9, 2001. Thus, the GOMOR met the requirement that it must list the "applicable portions of investigations . . . that serve . . . as the basis for the letter." Army Reg. 600-37, ¶ 3-4b(1)(a).

The Plaintiff alleges "[t]he officer is to be provided, prior to exercising his right of rebuttal, and prior to the placing of the MOR in his OMPF, with all documents upon which the allegations forming the basis of the MOR are contained." Compl., ¶ 107. While a copy of the DAIG ROI was not provided to the Plaintiff contemporaneously with the GOMOR, the Plaintiff received a redacted copy of the ROI that he was able to use to prepare his rebuttal to the GOMOR. AR 184 n. 1. The Plaintiff was able to address the contents of the DAIG ROI and the GOMOR in the rebuttal he submitted on April 5, 2002. AR 182-212. General Keane, the GOMOR issuer, reviewed the Plaintiff's rebuttal material prior to deciding where to file the Plaintiff's GOMOR. AR 181. The Army identified the basis of the GOMOR and provided the Plaintiff with the relevant documents forming the basis of the GOMOR. This process satisfied

all of the procedural due process requirements outlined by Army Regulation 600-37.

The DASEB addressed this contention in its Decision Summary.[3]  AR 008-009.  The DASEB's logic is clear and unassailable.  It summarized the Plaintiff's allegation as "[h]is procedural rights under AR 600-37 were violated due to not being afforded to review the documentation that served as the basis for the filing or applicable portions of the investigations or reports/documents that served as the basis for the GOMOR."  AR 009.  The DASEB responded to the Plaintiff's allegation as follows:

> The Board notes that the GOMOR specifies the basis of the report as the DAIG ROI.  The Board also notes that this appeal folder provides statements that the applicant did review a redacted copy of the ROI (a copy of which was not included in this appeal).  The Board opines that the report was not required to be provided in an unredacted format as per para. 3-3c, AR 600-37.  Furthermore, the Board opines that the applicant's due process rights were [] sufficiently protected via the GOMOR rebuttal process prior to the Issuing Authorities [sic] filing decision on 31 May, 2002.

AR 009.  This discussion easily satisfies the very deferential APA standard of review.  The DASEB "'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'"  MD Pharm., Inc., 133 F.3d at 16 (quoting Motor Vehicle Mfrs. Ass'n., 463 U.S. at 43).  While an agency's decision need not "be a model of analytic precision to survive a challenge," Dickson, 68 F.3d at 1404, the DASEB decision was analytically precise.  It outlined the Plaintiff's assertions and then addressed them in turn.  AR 009.  It notes first that the DAIG ROI was referenced in the GOMOR as required.  Id.  The DASEB then highlights that the Plaintiff had received the DAIG

---

[3] As this Court noted, the Plaintiff is not challenging the decision of General Keane, but the decision by the DASEB not to remove the GOMOR from the Plaintiff's OMPF. Memorandum Order, p. 10.

14

ROI prior to submitting his rebuttal. Id. Finally, the Board concludes that the Plaintiff was not entitled to an unredacted version of the ROI. Id. The DASEB conclusion after reviewing these claims was that the Plaintiff's due process rights under Army Regulation 600-37 had been sufficiently protected. Id.

In Count VI, the Plaintiff alleges that "[t]here Was Insufficient Evidence to Support the Factual Finding Giving Rise to the MOR." Compl., p. 21. As previously established, this Court's APA review of the DASEB decision is limited to the record before the DASEB. McDougall v. Widnall, 20 F. Supp.2d 78, 82 (D.D.C. 1998) (citations omitted). The DAIG ROI is not part of the Plaintiff's OMPF. See AR 046-331. Since the DASEB only has authority to remove or amend items that are filed in an applicant's OMPF, any request to change or contradict the DAIG ROI is beyond the authority of the DASEB. Army Reg. 600-37, Chapter 7. A decision by the DASEB not to alter the DAIG ROI and, therefore, not to exceed its regulatory authority is not arbitrary and capricious. Further, as set out above, the DASEB does not have the authority to change or remove records from a soldier's OMPF if they have a separate regulatory appeal authority. Army Reg. 600-37, ¶ 7-2a. Corrections to DAIG records can be requested through the DAIG pursuant to Army Regulation 20-1. Army Reg. 20-1, ¶ 3-8. As such, the DASEB did not have authority to alter a DAIG record even if it were present in the Plaintiff's OMPF.

Although the Plaintiff argued to the DASEB that there was insufficient evidence to support the factual findings in the GOMOR, he failed to provide a copy of the DAIG ROI to the DASEB. AR 008. It defies logic to assert that the DASEB could properly weigh the Plaintiff's purported version of events against the DAIG ROI's version of events without having the ROI to

examine. Despite these shortcomings in the Plaintiff's request and contrary to the Plaintiff's allegation in his complaint, Compl., ¶ 214, the DASEB explicitly considered this argument. The DASEB held that the GOMOR Issuing Authority was entitled to rely on a DAIG ROI as a sufficient basis for the imposition of a GOMOR. AR 009. This conclusion, that a General Officer can rely on a facially valid DAIG investigation as the basis for a GOMOR, is entirely reasonable and not arbitrary and capricious. To hold otherwise would require the Army to conduct additional inquiries or investigations into each and every investigation that resulted in a recommendation for action against a soldier. The rebuttal processes and protections already in place provide more than adequate safeguards for soldiers. In this case, the Plaintiff availed himself of his rebuttal rights, and General Keane considered his rebuttal before deciding to file the GOMOR in the Plaintiff's OMPF.

Finally, even though the DASEB could not have altered the DAIG investigation in any way, the recommendation to the DASEB from the Commander, Human Resources Command - St. Louis ("HRC Commander"), demonstrates the infirmity of the Plaintiff's allegations against the DAIG ROI. AR 005-007. The Plaintiff pins his attack on the DAIG ROI on his assertion that the conclusion that he was a Contracting Officer's Technical Representative ("COTR") is false. See, e.g., Compl., ¶¶ 165-72. The HRC Commander found that the Plaintiff had previously raised his claim that he was never designated as a COTR in his rebuttal that was considered by General Keane before he filed the GOMOR. AR 006. The HRC Commander noted that the Plaintiff raised the issue again to the DASEB. Id. She found that the Plaintiff, by his own admission, had referred to himself as the COTR on previous occasions. Id. In addition to the Plaintiff holding himself out as the COTR, the HRC Commander found that SY

16

Technology, the contractor in question, believed that the Plaintiff was in fact the COTR. Id. The HRC Commander quoted two selections from the affidavit of the SY Technology Vice-President, submitted by the Plaintiff, wherein the Vice-President referred to the Plaintiff as the COTR.[4] Id. The HRC Commander then succinctly summarized the evidence as follows:

> The officer held himself out to be the COTR for the SY Technology contract. Through its dealings with the officer, SY Technology itself believed that the officer was the COTR for its contract. Given these facts, it was neither untrue nor unjust for the DAIG to substantiate the allegation that the officer failed to perform his duties properly as a "COTR".

Id.

Moreover, the Plaintiff was reprimanded "1) for the 'appearance' that his personal interests clouded his professional judgment; 2) because the officer 'created a perception of impropriety and misdirected loyalty'; 3) because his actions 'gave rise to the appearance that [his] loyalties lay less with the U.S. Army and more with [his] former boss.'" AR 007, 179-180. As the HRC Commander stated "'DOD employees are required to accept responsibility for their decisions and the resulting consequences. This includes avoiding even the appearance of impropriety because appearances affect public confidence.'" AR 007 (citing Joint Ethics Regulation, Section 12-501, "Primary Ethical Values", paragraph d, "Accountability".). It is not arbitrary and capricious for an agency to reach the conclusion that a person who held himself out as the COTR and was believed by the contractor to be the COTR could be held administratively responsible when his actions regarding the contract created the perception of impropriety.

---

[4] In addition, correspondence dealing with the contract in question identified the Plaintiff as a contracting officer representative and as a technical monitor for the contract. See AR 196. Moreover, the Plaintiff's deputy division chief, his immediate subordinate, identified the Plaintiff as the COTR for the SY Technology contract. AR 207.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant the Defendant summary judgment and dismiss the Plaintiff's complaint with prejudice.

Respectfully submitted,

\_/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


\_/s_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney


\_/s_____
STEVEN M. RANIERI
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895

Of Counsel:
Captain Kevin McCart
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia 22203-1837