# OFFICER EVALUATION REPORT

For use of this form, see AR 623-105; the proponent agency is ODCSPER

*SEE PRIVACY ACT STATEMENT ON DA FORM 67-9-1*

## PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | | | e. BRANCH | f. DESIGNATED SPECIALTIES | g. PMOS CODE |
|---|---|---|---|---|---|---|---|---|
| WESTCOTT, MALCOLM B. | | COL | Year 1996 | Month 06 | Day 13 | MS | | 67A |

| g. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND | | | | h. REASON FOR SUBMISSION | |
|---|---|---|---|---|---|
| ASGN: USAR CTRL GP (AGR) W0Z4AA  ATCH: OCAR, WASHINGTON, DC 20310 | | | | 04 | RETIREMENT |

| i. PERIOD COVERED | | | | | | j. RATED MONTHS | k. NONRATED CODES | l. NO. OF ENCL | m. RATED OFFICER COPY (Check one and date) | | | n. PSB INITIAL | o. CMD CODE | p. PSB CODE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | 7 | | | 1. Given to Officer | | Date | | SZ | SA01 |
| Year 2002 | Month 05 | Day 24 | Year 2002 | Month 12 | Day 31 | | | | 2. Forwarded to Officer | | | | | |

## PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)

| a. NAME OF RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
|---|---|---|---|---|---|
| HELMLY, JAMES R. | | LTG | CH, ARMY RESERVE | | |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
|---|---|---|---|---|---|
| | | | | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | RANK | POSITION | SIGNATURE | DATE |
|---|---|---|---|---|---|
| HELMLY, JAMES R. | | LTG | CH, ARMY RESERVE | | |

| SENIOR RATER'S ORGANIZATION | BRANCH | SENIOR RATER TELEPHONE NUMBER | E-MAIL ADDRESS |
|---|---|---|---|
| Office of the Chief, Army Reserve Washington, DC  20310-2400 | GO | 703-697-1784 | james.helmly@ocar.army.pentagon.mil |

| d. This is a referred report. Do you wish to make comments? | | e. SIGNATURE OF RATED OFFICER | DATE |
|---|---|---|---|
| ☐ No  ☐ Yes, comments are attached | | | |

## PART III - DUTY DESCRIPTION

**a. PRINCIPAL DUTY TITLE** Deputy Chief, Army Reserve     **b. POSITION AOC/BR** 67A

**c. SIGNIFICANT DUTIES AND RESPONSIBILITIES. REFER TO PART IV, DA FORM 67-9-1**

Serves as the Deputy Chief, Army Reserve.  Advise the Chief, Army Reserve (CAR) on operational aspects of the Office of the Chief, Army Reserve (OCAR), Army Reserve Personnel Command (ARPC), and Full Time Support Management Directorate (FTSMD).   Act for the CAR in his absence, ensuring OCAR continues to operate as a full partner in Headquarters Department of the Army and Department of Defense.  Advise the Secretary of the Army, Under Secretary of the Army, Chief of Staff, Army, Vice Chief of Staff, Army and HQDA principals on United States Army Reserve (USAR) matters in the absence of the CAR.  Appear before various congressional committees for the CAR to justify and defend Army Reserve budget requests and provide information in response to inquiries by members of Congress and their staffs.  Ensure policies support over one million Reservists.

## PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

**CHARACTER** Disposition of the leader: combination of values, attributes, and skills affecting leader actions

**a. ARMY VALUES** (Comments mandatory for all "NO" entries. Use PART Vb.)

| | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | X | | 5. RESPECT: Promotes dignity, consideration, fairness, & EO | | X | |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | X | | 6. SELFLESS-SERVICE: Places Army priorities before self | | X | |
| 3. COURAGE: Manifests physical and moral bravery | X | | 7. DUTY: Fulfills professional, legal, and moral obligations | | X | |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | X | | | | | |

**b. LEADER ATTRIBUTES / SKILLS / ACTIONS:** First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb. **Comments are mandatory in**

| b.1. ATTRIBUTES (Select 1) Fundamental qualities and characteristics | 1. MENTAL Possesses desire, will, initiative, and discipline [X] YES ☐ NO | 2. PHYSICAL Maintains appropriate level of physical fitness and military bearing [X] YES ☐ NO | 3. EMOTIONAL Displays self-control; calm under pressure ☐ YES [X] NO |
|---|---|---|---|
| **b.2 SKILLS (Competence)** (Select 2) Skill development is part of self-development; prerequisite to action | 1. CONCEPTUAL Demonstrates sound judgment, critical/creative thinking, moral reasoning ☐ YES [X] NO | 2. INTERPERSONAL Shows skill with people: coaching, teaching, counseling, motivating and empowering [X] YES ☐ NO | 3. TECHNICAL Possesses the necessary expertise to accomplish all tasks and functions [X] YES ☐ NO |
| | 4. TACTICAL Demonstrates proficiency in required professional knowledge, judgment, and warfighting ☐ YES [X] NO | | |

**b.3. ACTIONS (LEADERSHIP) (Select 3)** Major activities leaders perform: influencing, operating, and improving

| INFLUENCING Method of reaching goals while operating / improving | 1. COMMUNICATING Displays good oral, written, and listening skills for individuals / groups ☐ YES [X] NO | 2. DECISION-MAKING Employs sound judgment, logical reasoning and uses resources wisely ☐ YES [X] NO | 3. MOTIVATING Inspires, motivates, and guides others toward mission accomplishment [X] YES ☐ NO |
|---|---|---|---|
| OPERATING Short-term mission accomplishment | 4. PLANNING Develops detailed, executable plans that are feasible, acceptable, and suitable ☐ YES [X] NO | 5. EXECUTING Shows tactical proficiency, meets mission standards, and takes care of people/resources [X] YES ☐ NO | 6. ASSESSING Uses after-action and evaluation tools to facilitate consistent improvement ☐ YES [X] NO |
| IMPROVING Long-term improvement in the Army, its people and organizations | 7. DEVELOPING Invests adequate time and effort to develop individual subordinates as leaders ☐ YES [X] NO | 8. BUILDING Spends time and resources improving teams, groups and units; fosters ethical climate ☐ YES [X] NO | 9. LEARNING Seeks self-improvement and organizational growth; envisioning, adapting and leading ☐ YES [X] NO |

**c. APFT: PROFILE**     DATE: OCT 02     HEIGHT: 70     WEIGHT: 216     YES

**d. JUNIOR OFFICER DEVELOPMENT** - *MANDATORY YES OR NO ENTRY FOR RATERS OF LTs AND WO1s.*

WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED?     ☐ YES  ☐ NO  [X]

DA FORM 67-9, OCT 97     +     REPLACES DA FORM 67-8, 1 SEP 79, WHICH IS OBSOLETE, 1 OCT 97     USAPA V2.00

| NAME WESTCOTT, MALCOLM B. | SSN | PERIOD COVERED 20020524 – 20021231 |

**PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

**a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION**

[X] OUTSTANDING PERFORMANCE, MUST PROMOTE   [ ] SATISFACTORY PERFORMANCE,   [ ] UNSATISFACTORY PERFORMANCE,   [ ] OTHER (Explain)

**b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE AND POTENTIAL FOR PROMOTION. REFER TO PART III, DA FORM 67-9 AND PART IVa, b, AND c DA FORM 67-9-1.**

Serving as Rater and Senior Rater in accordance with AR 623-105, paragraph 2-21. COL Westcott continues to distinguish himself as the Deputy Chief, Army Reserve and as an officer of unparalleled character a competence. Experienced, mature, technically competent and intellectually agile, he has contributed immeasurably to the success and reputation of the Army and the Army Reserve. He single-handedly led in establishing the Retention Transition Division as a value-added, major contributor to enhancing and improving USAR retention and recruitment capabilities. Forging a mutually respected and strong partnership with US Army Recruiting Command, he ensured materially improved business practices were implemented by the USAR leading to a total makeover of USAR recruiting and resulting in the first successful recruiting years since 1990 for the USAR. He is the consummate senior leader; a strong visionary, well grounded in the institutional principles and business practices of the Army, yet unafraid to challenge out-dated processes and procedures that hinder improvement or marginalize results. Promote this officer now and assign him the most demanding positions in the Army. He will excel wherever you send him.

**c. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT THROUGH LTC, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.**

**PART VI - INTERMEDIATE RATER**

Serving as Rater and Senior Rater in accordance with AR 623-105, paragraph 2-21.

**PART VII -SENIOR RATER**

**a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE**

[X] BEST QUALIFIED   [ ] FULLY QUALIFIED   [ ] DO NOT PROMOTE   [ ] OTHER (Explain below)

I currently senior rate __26__ officer(s) in this grade
A completed DA Form 67-9-1 was received with this report and considered in my evaluation and review   [X] YES   [ ] NO (Explain in c)

**b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)**

[ ] ABOVE CENTER OF MASS (Less than 50% in top box; Center of Mass if 50% or more in top box)

[X] CENTER OF MASS

[ ] BELOW CENTER OF MASS RETAIN

[ ] BELOW CENTER OF MASS DO NOT RETAIN

**c. COMMENT ON PERFORMANCE/POTENTIAL**

COL Westcott is a most loyal, completely competent, and professional officer who has, by actual manner of performance and conduct, demonstrated the breadth of vision, depth of competence and judgment, and strength of character associated with a general officer of the Army. COL Westcott has conducted himself in a completely positive, loyal manner. He is an officer and gentleman, in word and deed and has established a deserved reputation throughout the Army for his strength, in-depth experience and professional knowledge, and agile, strong intellect and vision. His record is replete with testaments to his moral and physical courage, selflessness, sense of duty, honor, and loyalty. He has served his Nation and the Army with distinction. COL Westcott will be retiring in February 2003. In the event of mobilization, recommend recall and assignment to the most demanding command position. Promote to Brigadier General immediately. Unlimited potential.

**d. LIST 3 FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT THROUGH LTC, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.**

RSC Commander, USARC DCG, MEDCOM Commander



**DEPARTMENT OF THE ARMY**
OFFICE OF THE CHIEF, ARMY RESERVE
WASHINGTON, DC 20310-2400

REPLY TO
ATTENTION OF

S: 14 May 99

DAAR-FDW (623-105)

23 Apr 99

MEMORANDUM FOR Major Michael D. Brown, 1301 S. Cleveland Street, #349, Arlington, VA 22204

SUBJECT: Officer Evaluation Report (OER) Referral (PCS, 980401-981130)
(Brown, Michael D., MAJ, CM, ███████)

1. Under the provisions of AR 623-105, paragraph 3-32 and 3-33, the enclosed copy of DA Form 67-9 for the period 980401-981130 is referred to you for acknowledgement. Specific reasons for referral are as follows:

   a. Negative remarks about the rated officer's Values or Leader Attributes/Skills/Actions in rating official's narrative evaluation.

   b. Rating of "NO" in Part(s) IVa-c.

   c. Performance and potential evaluation in Part Va of "Unsatisfactory performance, do not promote".

   d. Senior rater promotion potential evaluation of "Do not Promote" in Part VIIa.

   e. Senior rater potential evaluation in bottom box of Part VIIb.

   f. Negative comments in Part Vb, VI, and VIIc.

2. You must acknowledge receipt of the enclosed copy and may provide comments if desired. Any comments submitted must be factual, concise, and limited to matters directly related to the evaluation on the referred report. Enclosures to comments provided are not authorized and will be withdrawn prior to forwarding the report, referral, acknowledgement and comments to HQDA.

3. Should you submit comments with your acknowledgement, you are advised that they will not constitute a request for a Commander's Inquiry or Appeal. Such request must be submitted separately under the provisions of AR 623-105, paragraph 5-30 or chapter 9, as appropriate.

4. Acknowledge receipt of the referred OER and submit any desired comments, by return endorsement, in accordance with the above indicated suspense date.

Encl
as

MALCOLM B. WESTCOTT
Colonel, GS
Director, USAR Force Programs

**PART I - ADMINISTRATIVE DATA**

a. NAME (Last, First, Middle Initial): BROWN, MICHAEL D.

b. SSN: [redacted]  c. RANK: MAJ  d. DATE OF RANK: Year 1992 Month 06 Day 13  e. BRANCH: CM  f. SPECIALTIES/PMOS: 74

g. STATION, ZIP CODE OR APO, MAJOR COMMAND: USAR CTRL GP UIC: W4M001 ATCH: ARSC, ARLINGTON, VA 22209-1808

h. REASON FOR SUBMISSION: 04  PCS

i. PERIOD COVERED: From Year 1998 Month 04 Day 01  Thru Year 1998 Month 11 Day 30

j. RATED MONTHS: 8  k. NONRATED CODES:  l. NO. OF ENCL: 0

m. RATED OFFICER COPY (Check one and date)
1. Given to Officer
2. Forwarded to Officer

n. PSB INITIAL:  o. CMD CODE: SE  p. PSB CODE: SA01

**PART II - AUTHENTICATION (Rated officer's signature verifies officer has seen completed OER Parts I-VII and the admin data is correct)**

a. NAME OF RATER (Last, First, MI): LAKENEY, CHARLES D.    SSN: [redacted]    RANK: LTC    POSITION: Chief, FI Team    SIGNATURE: [signed]    DATE: 19 JAN 1999

b. NAME OF INTERMEDIATE RATER (Last, First, MI):    SSN: [redacted]    RANK:    POSITION:    SIGNATURE:    DATE:

c. NAME OF SENIOR RATER (Last, First, MI): WESTCOTT, MALCOLM B.    SSN: [redacted]    RANK: COL    POSITION: Dir, USAR Force Prog    SIGNATURE: [signed]    DATE: 23 APR 1999

d. RATER'S ORGANIZATION: HQDA, OCAR, Suite 11100, 1421 Jefferson Davis Highway, Arlington, VA 22202-3259

BRANCH: MS    SENIOR RATER TELEPHONE NUMBER: 703-601-0652    E-MAIL ADDRESS: westcott@ocar.army.pentagon.mil

e. This is a referred report. Do you wish to make comments?  [X] Yes, comments are attached  [ ] No    e. SIGNATURE OF RATED OFFICER:    DATE:

**PART III - DUTY DESCRIPTION**

a. PRINCIPAL DUTY TITLE: SYSTEM INTEGRATION OFFICER    b. POSITION AOC/BR: 90A00

c. SIGNIFICANT DUTIES AND RESPONSIBILITIES, REFER TO PART IVc, DA FORM 67-9-1

Provides input to USAR equipping and readiness plans and policies.   Monitors the USAR Status of Resources and Training Systems (SORTS) to determine readiness related trends and potential problem areas.  Serves as point of contact for issues concerning unit readiness.  Acts as principle action officer for specific logistics systems, particularly those systems related to equipment requisitioning and asset reporting.  Provides guidance to DA DCSOPS and ODCSLOG on distribution plans for displaced and redistributed equipment.  Coordinates with and provides guidance to FORSCOM, USARPAC, USAREUR and USARC on USAR equipment readiness and related logistics issues.  Serves as logistics analyst and logistics systems advisor in the Army Reserve Force Programs Directorate, Office of the Chief, Army Reserve.

**PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)**

**CHARACTER** Disposition of the leader; combination of values, attributes, and skills affecting leader actions

a. ARMY VALUES (Comments mandatory for all "NO" entries. See PART Vb.)

| | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| 1. HONOR: Adherence to the Army's publicly declared code of values | | X | 5. RESPECT: Promotes dignity, consideration, fairness, & EO | | | X |
| 2. INTEGRITY: Possesses high personal moral standards; honest in word and deed | | X | 6. SELFLESS-SERVICE: Places Army priorities before self | | X | |
| 3. COURAGE: Manifests physical and moral bravery | X | | 7. DUTY: Fulfills professional, legal, and moral obligations | | X | |
| 4. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and the soldier | | | | | | X |

b. LEADER ATTRIBUTES / SKILLS / ACTIONS: First, mark "YES" or "NO" for each block. Second, choose a total of six that best describe the rated officer. Select one from ATTRIBUTES, two from SKILLS (Competence), and three from ACTIONS (LEADERSHIP). Place an "X" in the appropriate numbered box with optional comments in PART Vb.  Comments are mandatory in Vb for all "No" entries.

b.1. ATTRIBUTES (Select 1)
Fundamental qualities and characteristics

| 1. MENTAL Possesses desire, will, initiative, and discipline | [X] NO | [X] 2. PHYSICAL Maintains appropriate level of physical fitness and military bearing | [X] NO | 3. EMOTIONAL Displays self-control; calm under pressure | [X] NO |
|---|---|---|---|---|---|

b.2. SKILLS (Competence) (Select 2)
Skill development is part of self-improvement; prerequisite to action

| 1. CONCEPTUAL Demonstrates sound judgment, critical/creative thinking, moral reasoning | [X]$ NO | 2. INTERPERSONAL Shows skill with people: coaching, teaching, counseling, motivating and empowering | YES [X] | TECHNICAL Possesses the necessary expertise to accomplish all tasks and functions | [X] NO |
|---|---|---|---|---|---|
| [X] TACTICAL Demonstrates proficiency in required professional knowledge, judgment, and warfighting | | | | | [ ] NO |

b.3. ACTIONS (LEADERSHIP) (Select 3) Major activities leaders perform: influencing, operating, and improving

INFLUENCING
Method of reaching goals while operating / improving

| 1. COMMUNICATING Displays good oral, written, and listening skills for individuals / groups | [X] NO | 2. DECISION-MAKING Employs sound judgment, logical reasoning and uses resources wisely | [X] NO | 3. MOTIVATING Inspires, motivates, and guides others toward mission accomplishment | [X] NO |
|---|---|---|---|---|---|

OPERATING
Short-term mission accomplishment

| 4. PLANNING Develops detailed, executable plans that are feasible, acceptable, and suitable | [X] NO | 5. EXECUTING Shows tactical proficiency, meets mission standards, and takes care of people/resources | [X] NO | 6. ASSESSING Uses after-action and evaluation tools to facilitate consistent improvement | [X] NO |
|---|---|---|---|---|---|

IMPROVING
Sustainment in the Army and its organizations

| 7. DEVELOPING Invests adequate time and effort to develop individual subordinates as leaders | [X] NO | 8. BUILDING Spends time and resources improving teams, groups and units; fosters ethical climate | YES [X] | 9. LEARNING Seeks self-improvement and organizational growth; envisioning, adapting and leading change | [X] NO |
|---|---|---|---|---|---|

c. APFT: PASS    DATE: JUN 1998    HEIGHT: 68    WEIGHT: 180    YES

d. SENIOR OFFICER DEVELOPMENT - MANDATORY YES OR NO ENTRY FOR RATERS OF LTs AND WOIs.

e. WERE DEVELOPMENTAL TASKS RECORDED ON DA FORM 67-9-1a AND QUARTERLY FOLLOW-UP COUNSELINGS CONDUCTED?    [ ] YES    [ ] NO    [X]

DA FORM 67-9, OCT 97    REPLACES DA FORM 67-8, 1 SEP 79, WHICH IS OBSOLETE, 1 OCT 97    USAPA V2.00

**PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

**a. EVALUATE THE RATED OFFICER'S PERFORMANCE DURING THE RATING PERIOD AND HIS/HER POTENTIAL FOR PROMOTION**

| | OUTSTANDING PERFORMANCE, MUST PROMOTE | | SATISFACTORY PERFORMANCE, PROMOTE | [X] | UNSATISFACTORY PERFORMANCE, DO NOT PROMOTE | | OTHER (Explain) |

**b. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE AND POTENTIAL FOR PROMOTION. REFER TO PART III, DA FORM 67-9 AND PART IVa, b, AND c DA FORM 67-9-1.**

...jor Brown is a technically competent officer who provided a positive contribution to the equipping issues in the USAR's Weapons of Mass Destruction program. I selected "no" entries for interpersonal skills and building resulting from actions that MAJ Brown took during the rating period. As the result of a personal relationship MAJ Brown pursued with a NCO that did not progress to his satisfaction, he attempted to jeopardize the duty status of this NCO. He made an issue of her security clearance, implied mental problems, and accused her of drug use to her supervisor, peers, other officers, and outside agencies. In each matter there was absolutely no finding of fact nor did this NCO ever exhibit anything but superior performance. Major Brown's actions in this matter resulted in him being issued a General Officer Letter of Reprimand. Major Brown's failure in interpersonal and building skills was again demonstrated when he could not develop a working relationship with an officer peer at the USARC. His relationship with this officer was so poor that counseling by the Director of Force Programs could not correct it and MAJ Brown was removed from working this critical WMD coordination project. Major Brown's demonstrated lack of maturity and propriety is in contravention of the Army values of honor, integrity, respect, and loyalty. His actions retarded the building of a team relationship with the USARC and most importantly damaged the command climate in this office. Despite his vast knowledge in the area of chemical equipping, MAJ Brown has rendered himself less effective due to his personal demeanor. He does not possess the Army attributes nor the leadership skills to be promoted to the next higher grade.

**c. IDENTIFY ANY UNIQUE PROFESSIONAL SKILLS OR AREAS OF EXPERTISE OF VALUE TO THE ARMY THAT THIS OFFICER POSSESSES. FOR ARMY COMPETITIVE CATEGORY CPT THROUGH LTC, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.**

**PART VI - INTERMEDIATE RATER**

**PART VII - SENIOR RATER**

**a. EVALUATE THE RATED OFFICER'S PROMOTION POTENTIAL TO THE NEXT HIGHER GRADE**

| | BEST QUALIFIED | | FULLY QUALIFIED | [X] | DO NOT PROMOTE | | OTHER (Explain below) |

I currently senior rate _____ 23 _____ officer(s) in this grade

A completed DA Form 67-9-1 was received with this report and considered in my evaluation and review [X] YES [ ] NO (Explain in c)

**b. POTENTIAL COMPARED WITH OFFICERS SENIOR RATED IN SAME GRADE (OVERPRINTED BY DA)**

| | ABOVE CENTER OF MASS (less than 50% in top box; Center of Mass if 50% or more in top box) |
| | CENTER OF MASS |
| | BELOW CENTER OF MASS RETAIN |
| [✓] | BELOW CENTER OF MASS DO NOT RETAIN |

**c. COMMENT ON PERFORMANCE/POTENTIAL**

Major Brown regularly causes himself to be in a position of professional risk. Though he has the technical competence to perform his assigned duties, he has neither the maturity, judgement, interpersonal skills, nor moral values necessary to be considered for positions of higher responsibility or authority. His personal actions degraded the command climate and reduced division effectiveness. His total disregard for Army values cannot be tolerated. Do not promote or retain. This officer should not be continued in the AGR program. He should be removed from Active status as soon as possible.

**d. LIST 3 FUTURE ASSIGNMENTS FOR WHICH THIS OFFICER IS BEST SUITED. FOR ARMY COMPETITIVE CATEGORY CPT THROUGH LTC, ALSO INDICATE A POTENTIAL CAREER FIELD FOR FUTURE SERVICE.**

None - Remove from service.

DA FORM 67-9, OCT 97 (Reverse)    USAPA V2.00



INSPECTOR GENERAL
DEPARTMENT OF DEFENSE
400 ARMY NAVY DRIVE
ARLINGTON, VIRGINIA 22202

Colonel Malcom B. Westcott, U.S. Army Reserve
  Deputy Chief, Army Reserve
2400 Army Pentagon
Room 1E729
Washington, DC 20310-2400

Dear Colonel Westcott:

We recently completed an investigation into allegations that you
violated the provisions of Title 10, United States Code, Section 1034,
Military Whistleblower Protection Act, and its implementing DoD Directive,
by taking unfavorable actions against MAJ Michael D. Brown, U.S. Army
Reserve, in reprisal for MAJ Brown's protected communications.

We reviewed applicable documentation and conducted interviews
with witnesses familiar with events at issue.  We did not substantiate the
allegations.  We concluded that the unfavorable actions taken against
MAJ Brown were properly justified and would have been taken absent
efforts by MAJ Brown to disclose information concerning a possible
violation of law or regulation.

By separate correspondence we provided the Inspector General,
Department of the Army, the results of our investigation.  Should you have
any questions, please contact me or Mr. James Sheldon at (703) 604-
8511.

Sincerely,

Clifford F. Broome
Director
Office of Departmental Inquiries



DEPARTMENT OF THE ARMY
UNITED STATES ARMY TRIAL DEFENSE SERVICE
OFFICE OF THE REGIONAL DEFENSE COUNSEL
FORT GEORGE G. MEADE, MARYLAND 20755

ANME-JAT (27-1)                                                                            13 Apr 00

MEMORANDUM FOR Brigadier General Daniel A. Doherty, Deputy The Inspector General, 1700 Army Pentagon, Washington, DC 20310-1700

SUBJECT: DAIG Investigation Regarding COL(P) Malcolm B. Westcott

1. I serve as defense counsel for COL Bruce Westcott. This memorandum is to request your support to expedite COL Westcott's investigation. As background:

2. In Oct 99, CID questioned COL Westcott concerning allegations involving contract improprieties and post-employment restriction violations regarding MG (Retired) Max Baratz, former Chief of Army Reserve (CAR). Due to COL Westcott's involvement with the contracts at issue, his OCAR positions where he was involved with the issues involving MG Baratz, and out of an abundance of caution, CID read COL Westcott his Article 31 rights. On 1 Oct 99, COL Westcott waived his rights and provided a full sworn statement. Later, on 21 Oct 99, CID again questioned COL Westcott and obtained a second sworn statement. COL Westcott also provided CID with various information to assist in the investigation. CID (POC SA Khin, 703-428-7359) and the Assistant US Attorney (MAJ Mark Tellitocci, 703-299-3842) prosecuting the case against MG Baratz have repeatedly assured me they view COL Westcott as a witness, not as a suspect.

3. In early March, we were notified that the DAIG is now reviewing the case. I was originally told that once CID "cleared" COL Westcott, his confirmation would go forward. COL Westcott and I have worked hard, as much as it was in our capability, to move this investigation forward. We were told that the DAIG was monitoring the investigation, but that the focus was on MG Baratz. To our knowledge, there has been no movement against COL Westcott on the investigation. MAJ Tellitocci is pursuing charges against MG Baratz in Federal Court and indicated the charges will likely take many additional months to resolve.

4. COL Westcott serves as the Deputy Chief of the Army Reserve (DCAR), a Brigadier General billet, and is promotable to Brigadier General. Confirmation of his promotion is on hold pending completion of the investigation. Promotion to Brigadier General will significantly assist COL Westcott and the Army in completing his DCAR duties. COL Westcott has been seemingly trapped between CID and DAIG investigations for nearly 8 months. Anything you can do to expedite the DAIG review is sincerely appreciated. Please contact COL Westcott or me, 301-677-9231, if there is anything we can provide and anything we can do to expedite this matter.

ROBERT D. TEETSEL
LTC, JA
Regional Defense Counsel



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY TRIAL DEFENSE SERVICE
OFFICE OF THE REGIONAL DEFENSE COUNSEL
FORT GEORGE G. MEADE, MARYLAND 20755-5030

REPLY TO
ATTENTION OF:

ANME-JAT (27-1)                                        31 October 2000

MEMORANDUM FOR Major General Joseph R. Inge, Deputy Inspector General, 1700 Army
Pentagon, Washington, DC, 20310-1700

SUBJECT: DAIG Investigation Regarding COL (P) Malcolm B. Westcott

1. References:

    a. Memorandum, USATDS, ANME-JAT, 13 Apr 00, Subject: DAIG Investigation Regarding
COL (P) Malcolm B. Westcott.

    b. Memorandum, USATDS, ANME-JAT, 11 Aug 00, Subject: DAIG Investigation Regarding
COL (P) Malcolm b. Westcott.

2. References a and b outline the intractable, torturous chain of investigative events COL Westcott has
been subjected to over the course of the past year. In response to reference b, your office informed me
that it would conduct a preliminary inquiry (PI) into the credibility of the allegations against COL
Westcott. Now, almost three months later, I have learned that the PI is just getting underway.

3. As you know, COL Westcott is currently the Deputy Chief of the Army Reserve and, as such,
occupies a Brigadier General billet. He has been promotable for over a year. In fact, his peers were
promoted to BG in November 1999. The record to date clearly shows that, while COL Westcott has
cooperated fully at every turn of the investigation, the DAIG's lumbering, dilatory process has
significantly and negatively impacted on the mission of the Army Reserve and tarnished the reputation of
an honorable man who has dedicated his life to the selfless service of his nation and its soldiers. In my
15 years of service, much of it dealing with criminal and administrative investigations, I have never
witnessed such a lack of investigative will and drive as I have in COL Westcott's case.

4. No installation commander would tolerate such a lethargic investigation from his or her officers (or
NCOs for that matter!). Yet, the DAIG continues to plod along. No soldier should endure the unending
purgatory that befalls those who are the target of DAIG complaints. Anything you can do to expedite the
DAIG review of COL Westcott's case is sincerely appreciated. Please contact me at (301) 677-9218 if
there is anything I can provide or anything I can do to expedite this matter.

2 Encl
1. Memo dated 11 Aug 00
2. Memo dated 13 Apr 00

SCOTT L. KILGORE
LTC, JA
Regional Defense Counsel



DEPARTMENT OF THE ARMY
OFFICE OF THE INSPECTOR GENERAL
1700 ARMY PENTAGON
WASHINGTON DC 20310-1700

0 7 FEB 2001

SAIG-IN (20-1b)

MEMORANDUM FOR VICE CHIEF OF STAFF, ARMY

SUBJECT: Directive for Investigation—ACTION MEMORANDUM

1. Purpose: To obtain a directive to conduct an inspector general investigation.

2. Discussion: On 1 June 1999, the Department of the Army Inspector General Agency (DAIG) received an Inspector General, Department of Defense, Hotline referral, #99-L73173. The complainant alleged misconduct on the part of ( ) and Colonel (COL) (Promotable) Malcolm Bruce Westcott pertaining to the creation of a task order to support a requirement at the United States Army Reserve Command, Atlanta, Georgia, and funding of the task order with Chief Army Reserve withhold funds prior to his ( ) etirement.

   a. Regulation 5500.7R, Chapter 10, paragraph 201c(1), stated if a violation of 18 U.S. Code 207 (one-year retirement restrictions as a general officer) was suspected, the matter was required to be reported to the Army Criminal Investigation Command (CID). Accordingly, the allegations were referred to CID on 18 August 1999.

   b. CID determined that there was probable cause that ( ) had committed a criminal violation. His case is now with the US Attorney for the Eastern District of Virginia. The Department of Justice Criminal Division has transferred the case to the Civil Division.

   c. On 9 March 2000, CID referred COL Westcott's allegations to DAIG for appropriate action. On 22 March 2000, CID informed DAIG that their investigation did not establish any evidence of criminal wrongdoing on the part of COL Westcott.

   d. Our inquiry determined the following allegations require further investigation:

       (1) COL Westcott performed his duties as a contracting officer's representative in a negligent manner.

       (2) COL Westcott violated standards of ethical conduct in contracting and related activities pertaining to SY Technology.

FOR OFFICIAL USE ONLY. DISSEMINATION IS PROHIBITED EXCEPT
AS AUTHORIZED BY AR 20-1.

b7c

Printed On ♻ Recycled Paper

SAIG-IN  (20-1b)
SUBJECT:  Directive for Investigation—Action Memorandum

3.  Number assigned to this case:  #01-018.

4.  Recommendation:  That you sign the directive at Tab A.

Encl

b7C

Testimony of COL MALCOLM B. WESTCOTT, Social Security Number: 012 38 1477, taken at Investigations Division, Department of the Army Inspector General's Office, Arlington, Virginia, on 23 April 2001 between 1244 and 1644 hours, by (

                                                        ) Inspectors General.

    (          )      The time is 1244.  This tape-recorded interview is being conducted on 23 April 2001 at Crystal City, Virginia.

    Persons present are the suspect, COL MALCOLM B. WESTCOTT, his counsel, Lieutenant Colonel Kilgore, and the investigating officers, (
                                                                      ).

    This investigation, directed by the Vice Chief of Staff, Army, is concerning allegations against a senior official assigned to the United States Army Reserve.

    An Inspector General is an impartial fact-finder for the commander.  Testimony taken by an IG and reports based upon that testimony may be used for official purposes.  Access is normally restricted to persons who clearly need the information to perform their official duties.  In some cases, disclosure to other persons may be required by law or regulation, or may be directed by proper authority.

    Upon completion of this interview, I will ask you whether you consent to the release of your testimony if requested by members of the public pursuant to the Freedom of Information Act.

    Since I will ask you to provide your social security number to help identify you as the person testifying, (
    ) provided you with a Privacy Act Statement.

    Sir, do you understand it?

    COL WESTCOTT:      Yes.

    (          )      you are advised that you are suspected of the following allegations, which we want to question you about: that you performed your duties as a COTR in a negligent manner and violated standards of ethical conduct in contracting and related activities pertaining to SY Technology, Incorporated.

    You were previously advised of your rights and you signed a DA 3881, Waiver Certificate.  Sir, do you understand your rights?

    COL WESTCOTT:      Yes.

FOR OFFICIAL USE ONLY

EXHIBIT B-                          1                          [WESTCOTT]

ANME-JAT                                                        5 April 2002

MEMORANDUM FOR General John M. Keane, Vice Chief of Staff of the Army, 200 Army Pentagon, Washington, DC  20310-

SUBJECT:  Response to General Officer Memorandum of Reprimand (GOMOR)

1. This responds to your memorandum of reprimand dated 10 October 2001. The memorandum contains significant substantive factual inaccuracies and is the product of a seriously flawed investigation. For these reasons and for the reason of fairness and due process for a soldier who has dedicated his professional life trying to do the right thing, I respectfully appeal to you to reconsider signing the memorandum.  In support of this request, I respectfully ask you to consider the following information:

2. Essentially, the subject GOMOR seeks to reprimand me for negligence in the performance of duties as a Contracting Officer's Technical Representative (COTR) regarding my involvement with several task orders requested by the Office of the Chief, Army Reserve (OCAR) through a contract in place with the Army Space Command (ARSPACE).[1]  I respectfully submit that these allegations of negligence are incorrect both factually and as a matter of law.  At all times, I conducted my activities with the utmost respect for Government ethics rules and principles of fair dealing.  I also acted in a manner entirely consistent with the standards expected of an officer with the background, experience, education, and training in Government contracting as I had at the time.

3. Before discussing the substantive issues surrounding the DAIG's two-year investigation and resulting GOMOR, it is important that the factual inaccuracies that form, in part, the basis for this action are clearly addressed.  The investigation and GOMOR point out that the former Chief, Army Reserve (CAR) (Major General Baratz) and I had a "long-standing professional and personal relationship."  We had a professional relationship built on mutual respect and loyalty to our Army.  It is totally unfounded to label the work relationship as "personal."  While he was my career mentor, we always conducted our relationship in a professional, totally honorable manner consistent with all Army ethical standards.  We never crossed the line nor violated our personal ethos or those of the Army.  Our relationship was strictly professional, as you would expect any principle staff officer to have with the Commanding General, nothing more, and nothing less. Clearly, it was convenient for investigators to presume that our relationship was personal and extended beyond our work, but this assumption is wrong.  There is not one shred of evidence

---

[1] It appears both from the GOMOR and my copy of the heavily redacted Department of the Army Inspector General (DAIG) Report of Investigation (ROI) that it is suspected that I had some sort of sinister involvement in possible violations of ethics laws regarding the post employment endeavors of the former Chief of the Army Reserve, Major General Max Baratz, USA.  Sadly, while the ROI concedes that there is insufficient evidence to establish this is more likely than not, it nonetheless indicates, in a very backhanded way, otherwise.  The GOMOR seems to further this unfortunate theme.

Specifically, SY Technology was tasked to "support the horizontal and vertical integration necessary to satisfy the Chief, Army Reserve's missions, goals, and objectives in the force management area, including force structure, force integration, and the force development process (Task Order 97-139). Space Command then submitted the Task Order to SY Technology, who prepared a Task Order Plan (TOP) to accomplish the stated work requirement.

e. As the primary point-of-contact (POC) at OCAR for this project, I approved the TOP, and MG Baratz authorized the OCAR Comptroller to forward appropriate funding to Space Command. Space Command then issued the task order to SY Technology for the period September 1997 through September 1998. The Space Command Delivery Order, Army Reserve Task Order, SY Technology Task Order Plan, and Contracting Officer Technical Representative (COTR) approval recommendation are attached at Tab 2, Memorandum of Keith Skidmore, VP SYTECH; Tab 3, Letter from Mr. Mark Lumer (October 3, 2001). It is important to note that in each of the contracting actions at issue in the IG's investigation, I was not designated as a Contracting Officer's Representative (COR) or COTR.[3] The designated COR was Mr. Max Delgado of US Army Space and Missile Defense Command.

f. As such, it was his responsibility to ensure that all of the task orders were executed in accordance with Government contracting rules and regulations. This is a critical point, as the linchpin of the DAIG report of Investigation (ROI) and the resulting GOMOR is that I was somehow "negligent" in the performance of my duties as a COTR. "COTR", I have subsequently learned, is a term of art in the Government contracting community which identifies an individual with specific training and knowledge in the Government procurement process and whose qualifications are recognized through the formal appointment as such by a warranted contracting officer. I had no training in contracting and was never appointed, formally or informally, by the cognizant contracting officer, Ms. Diane Rayburn. Tab 4, Letter from Ms. Darrly Nottingham (March 25, 2002). It is for this reason that the IG's substantiation of negligence as a COTR must, as a matter of law fail. Consequently, the resulting GOMOR should be quashed.

g. The GOMOR states that in the days prior to the former CAR's departure from active duty, I was instrumental in obtaining a $100,000 task order amendment to SY TECH for general United States Army Reserve Command (USARC) force development support. (I speculate that this was Task Order 97-139, which was the only task order in effect at the time for such services, but such Task Order did not apply to USARC, only to OCAR at the Pentagon.) The implication here is that I somehow improperly directed government business to my boss's future employer.[4] The fact of the matter is that Task Order 97-139 was implemented in September 1997, and all we were accomplishing in May 1998 was a routine modification to a task order, and was viewed as

---

[3] During the investigation, I characterized my role in some of these task orders as a "COTR." In fact, I did not occupy that special status with clearly delineated duties and responsibilities. Rather, serving as a "COTR" I was simply acting as the "primary POC" on a contracting action.

[4] Although that is the implication, I note that the IG specifically found that I did not direct business to my boss's future employer. Rather, the IG found that this perception existed primarily because of the timing of the Task Orders and MG Baratz's retirement.

such by the entire staff. The effect of this modification was simply to add two additional employees to the newly reorganized DCSOPS and Directorate of Force Programs. This amendment had no connection to any future needs identified for senior officer training. It is also important that you know that I was completely unaware that MG Baratz had any future employment prospects at the time with SY Technology.[5] I was directed to participate in this task order by the CAR and Deputy Chief, Army Reserve (DCAR) and the Director of the OCAR Staff. All I was attempting to do was my job in a diligent manner. Tab 5, Affidavit of Guy A. Giancarlo (April 4, 2002).

h. The GOMOR also attempts to make a direct connection between actions taken prior to the departure of MG Baratz from active duty, and the SY Technology project work in the subsequent year. In point of fact, the task order the GOMOR states that I was in charge of monitoring had no connection whatsoever with the senior officer training initiative it mentions. The discussion of the senior officer training initiative did not occur, as I recollect, until several months after the time MG Baratz left active duty. With respect to my duty to monitor work performed by SY Technology--the ultimate employer of my former boss—I would have had to do such monitoring anyway in my official roles as DCSOPS and later DCAR, since the task order had been pending since 1997. With due respect, I submit that the improper juxtaposition of these events implies an unholy relationship between MG Baratz and myself. I would have had neither reason nor pressure to violate my trust to the OCAR and the Army in this fashion, and for investigators to provide such an innuendo is derelict and irresponsible.

i. In paragraph 3 of the GOMOR, I am accused of perfunctorily executing my duties, citing a failure to note the work that my former boss (presumably MG Baratz) had done on a senior leadership training seminar for the contractor SY Tech in a January 1997 quarterly performance evaluation. In fact, in 1997, MG Baratz was serving on active duty as the CAR. He did not retire until 1998. Your memo also stated that I allowed SY Technology to prepare and submit their own evaluations, implying that I was nothing but a rubber stamp for the submittals of my former boss. This is absolutely false. Clearly, these are most likely mere factual errors by the investigators, but more significant, it once again drives a conclusion that is inappropriate and inaccurate. Tab 2; Tab 6, Affidavit of William T. Lee (April 4, 2002); Tab 7, Affidavit of Anthony M. Fields (April 4, 2002); Tab 8, Affidavit of Nolan R. Meadows (April 3, 2002); Tab 9, Affidavit of Richard J. Sherlock, Jr. (April 4, 2002).

5. Finally, as you know, this intractable process has dragged on for almost three years. All the while, I have been in a promotable status to the rank of Brigadier General and serving as the DCAR, a BG position. Federal law places time limits on the services regarding the promotion of officers. Specifically 10 U.S.C. § 14311 provides that, for officers on an approved promotion list, promotions cannot be delayed more than six months without Secretary of the Army approval and not more than 18 months in any event. See *Rolader v. United* States 42 Fed. Cl. 782 (Ct. Cl. 1999). To the best of my knowledge, the Army never sought SA approval to extend the delay of

---

[5] On the one hand, the IG questions my veracity on this matter. On the other hand, the IG admits that there is insufficient evidence to prove, even by the lowest standard known to the law – preponderant evidence – that I had such knowledge. I had hoped for fairer treatment than this.

my promotion beyond six months. More importantly, the Army leadership, knowing full well the existence of 10 U.S.C. 14311, has intentionally delayed my promotion for almost twice the length allowed by law. The Army's investigative protocols have failed to preserve the due process and fairness standards that validate the trust we place in the system. I have asked myself why the letters of my counsel, including a personal appearance before the DTIG on my behalf, asking that the investigation be conducted in a timely fashion were ignored. Tab 10, Letter from Scott W. Kilgore, LTC, JA, USA (August 11, 2000).

6. Serious concerns remain in the minds of investigators dealing with the transition of the former CAR from active duty to his current employment at SY Technology. As you are aware, the Army initiated proceedings against him. I was subpoenaed to testify twice before the Virginia Grand Jury on what I knew, and I was forthright and truthful in all my responses to all questions. I believe that my testimony was an important factor in the grand jury's refusal to indict MG Max Baratz. Failure to bring the criminal charges to trial is a source of embarrassment and frustration for several Army investigators, including the principal investigator in that case, Mr. John F. Khin (Special Agent, CID Command), who's influence in this case has undoubtedly impacted his counterparts at OTIG. I believe because of his failure to secure an indictment against MG Baratz, after a 2-year investigation, he and his colleagues are persecuting me because of my grand jury testimony. This constitutes inappropriate behavior on their part. To the extent that the investigators are permitted to ignore queries for due process and statutory requirements are ignored, there appears to be a lack of responsible oversight in the investigative process. To the extent that misstatements of facts—substantive and details—are provided to you for signature on a memorandum of reprimand, then there is either a lack of professionalism on their part or a vendetta. In any case, after reading the GOMOR, my only desire is to receive fair treatment by the Army to which I have devoted my life and career.

7. My reputation both personal and professional, my career, and my family have suffered unfairly because of irresponsible behavior by Army investigators. They are acutely aware that I have been nominated for the rank of Brigadier General. I have served as the Deputy Chief, Army Reserve for the past three years. By all accounts, I have performed this job in a manner that gives credit to the Army and the soldier's that it serves. Tab 11, Letter from LTG Thomas J. Plewes, USA (April 5, 2002). The case submitted to you for action does not provide the necessary tenets of justice nor does it respect the process required by law and Army policy that protects our rights as soldiers.

8. I appeal to you to withhold finalizing your judgment and action until all facts have been reviewed and considered. I request a personal meeting with you and MG Baratz (Retired) and myself, at your convenience. The purpose of this meeting would be for you to hear first hand, unfiltered, what this process has done to two of your soldiers. Any system that advocates soldiers are guilty until they prove their innocence undermines the basic ethos we support and defend. I inherently trust your judgment and your ability to look at this case unbiased and without political intent.

ANME-JAT
SUBJECT: Response to General Officer memorandum of Reprimand (GOMOR)

Respectfully,

MALCOLM B. WESTCOTT
Colonel, U.S. Army
Deputy Chief, Army Reserve

Enclosures



**DEPARTMENT OF THE ARMY**
U.S. ARMY SPACE AND MISSILE DEFENSE COMMAND
POST OFFICE BOX 15280
ARLINGTON, VIRGINIA 22215-0280

REPLY TO
ATTENTION OF

SMDC-CM                                                      October 1, 2001

Colonel (P) M.B. Westcott
Office of the Chief
Army Reserve
1421 Jeff Davis Hwy
Suite 12000
Arlington, Virginia  22202

Reference Contract DASG62-96-D0006

Colonel(P) Westcott:

    I am the Contracting Executive and the Principal Assistant
Responsible for Contracting (PARC) for the U.S. Army Space and Missile
Defense Command (SMDC), and a member of the Senior Executive Service
(SES).  As such, I am responsible for all the contracting actions
executed by subordinate elements of this command, including the Army
Space Command in Colorado Springs, Colorado.

    I have personally reviewed the file for contract number DASG62-96-
D-006.  I have found no evidence of any improper conduct on your part,
nor even the appearance of improper conduct.  I have noted in several
pieces of correspondence that you are identified as a "Contracting
Officer's Representative" (COR) for one or more task orders issued
under that contract.  I must advise you that you were never a COR
under this contract, since all CORs must be appointed in writing by a
contracting officer and there is no evidence in the official file that
you were ever designated as such.  You were also referred to as a
"technical monitor" in some documents.  I must advise you that you
were never a tech monitor either, since, again, there is no formal
letter of appointment signed by a contracting officer designating you
as such.  About the most I can attribute to you pursuant to this
contract is that you were a customer and a receiver of the services
procured - you had no official standing whatsoever.  It is possible
that you were designated a technical representative by Max Delgado,
but the official contract file contains no evidence of that
appointment either.

-2-

Your advice and recommendations that do exist in the contract file are what I would expect to see from the receiver of the services contracted for - that the services supplied were acceptable, that the costs appeared reasonable to you as a subject matter expert in the area of work being obtained under the contract, and that additional work or scope needed to be adjusted from time to time for a variety of reasons.  These types of recommendations typically come from a variety of individuals, and there is no policy or regulation I am aware of which prohibits you from delegating the issuance of these types of advice or recommendations to a subordinate within your organization.

In summary, you had no authority over the contracting effort whatsoever, and you took no action that could be considered improper (given your lack of authority you couldn't have done so anyway).  I am bewildered by any accusation to the contrary - there's just no evidence at all of any impropriety.

For the record, I have never met you and I do not know you at all. I am enclosing a copy of my bio to establish my credentials to review this matter.

Sincerely,

MARK J. LUMER, SES
Principal Assistant Responsible
    for Contracting

Enclosure

# Biography of

# Mark J. Lumer

Mark J. Lumer is the Contracting Executive for the U.S. Army Space and Missile Defense Command (SMDC), with offices in Washington, DC, Huntsville, Alabama, Colorado Springs, Colorado, and Kwajalein Missile Range in the Marshall Islands. As the Director of Contracts, he oversees over $10 billion in active contracts, annual expenditures of about $1.5 billion and a staff of approximately 80. Mr. Lumer is a member of the Senior Executive Service and the Army Acquisition Corps, with Level III certifications in both contracting and program management.

Secretary of the Army Caldera presented Mr. Lumer with the "Decoration for Exceptional Civilian Service", the Army's highest civilian award, on Nov. 2, 2000. On April 12, 2000, Mr. Lumer was the sole recipient of the Secretary of the Army's FY 99 Award for Contracting Professionalism (Civilian). Mr. Lumer's office also received a second Secretary of the Army "Excellence in Contracting" award for procurement support to the warfighters in Kosovo. In July, 1999 SMDC Contracting was also recognized by the Secretary of the Army with two "Excellence In Contracting" awards. In June, 1999, the Secretary of Defense awarded Mr. Lumer's staff a "Teamworking Excellence" award for their handling of the Small Business Innovative Research (SBIR) Program. In May, 1999, SMDC Contracting received Vice-President Gore's Hammer Award for efficiency and streamlining the procurement process.

In May, 2000, Senator Kit Bond and the SBA recognized Mr. Lumer for his exceptional support of HUBZONE companies. SMDC Contracting received the National Institute of Severely Handicapped (NISH) "President's Award" on April 17, 2000, for its innovative use of contracting techniques that substantially increased job opportunities for handicapped individuals at the High Energy Laser System Test Facility (HELSTF) at White Sands, NM.

In August, 1998, SMDC became the first contracting command in the Department of Defense to achieve full operational capability with the Standard Procurement System (SPS), DoD's paperless acquisition process. From 1995-2000, Mr. Lumer's contracting offices were rated as the most efficient in the Army. The office was selected as the outstanding Resource Management office (major command and above) by the Secretary of the Army, for FY95.

SMDC has never lost a protest in its 43-year history, and the command has received only one GAO protest since FY 96. The Command has exceeded all of its annual socio-economic goals in four out of the last six years, and is a leader in awards to small and women-owned businesses, and disabled U.S. veteran owned businesses.

Mr. Lumer previously worked in the Pentagon, where he was the Army Policy Representative on the DAR Council for four years. As such, he established the Army's position on revisions and changes to the Federal Acquisition Regulation (FAR) and the Defense FAR Supplement (DFARS). Mr. Lumer had eight DAR committees reporting to him. He also served as the Acting Director, Army Procurement Policy in the office of the Assistant Secretary of the

Army (Research, Development, and Acquisition) immediately before joining SMDC.

Mr. Lumer's field experience includes two years as the Command Ombudsman at the U.S. Army Communications-Electronics Command in New Jersey. He also served as the Chief of Compliance there for three years, and as a contracting officer for several major weapons systems. In his ten years as a contracting officer, he never lost a protest while obligating over $1 billion.

He is a nationally known expert and author in the field of government contracting and has received many awards. He is listed in several editions of Who's Who, including the 1995 and 1996 editions of Who's Who in the World, and the Army has awarded him the Meritorious Civilian Service medal, the Superior Civilian Service medal, and the Commander's Award for Civilian Service.

He is the primary author of the "So You Think You Know" series of articles (approximately 30) for the National Contract Management Association (NCMA), and was the principal author of NCMA's Acquisition Reform I Seminar and the T.I.P.S. article which accompanied it. Mr. Lumer taught the seminar at almost 50 locations throughout the country. He co-authored the 1995-1996 book on Acquisition Reform (II) Implementation, and has taught it at many locations. His most recent co-authored book is on "Market Research".

Mr. Lumer was recognized by Federal Computer Week in 1990 as one of the "Top 100" government employees in acquisition. That same year the Governor of Kentucky appointed him as a Kentucky Colonel, in recognition of his contributions to the country. The Signal Corps Regimental Association chapter in Fort Monmouth awarded him the Order of Mercury (Bronze), the first civilian ever recognized by that chapter. In January 1996, Mr. Lumer was accepted into the MENSA Society.

Mr. Lumer holds BA and MBA degrees, and attended Albany Law School. He is a 1993 graduate of the Industrial College of the Armed Forces, a Certified Associate Contracts Manager, and was elected a Fellow by NCMA in 1984, at the time one of the youngest Fellows ever.

He was recognized by NCMA with the Outstanding Fellow award in July, 1994, and the National Achievement award in July, 1995. He has served as a Regional Vice President for the Mid-Atlantic region, and as National Vice President for Education and Certification. He held the post of National Vice President for Business Development from July 1, 1995, to July 31, 1996.

Mr. Lumer has been a guest speaker at over 125 seminars and symposia. He has made presentations before all three Armed Services, the Canadian Government's Department of Service and Supply, the Industrial College of the Armed Forces, the Defense Systems Management College, the Army Logistics Management College, and is a frequent guest lecturer at the Defense Executive Acquisition Pre-award course.

Mr. Lumer is married and the father of three children, two of whom, he notes, are no longer aliens, having left their teen-age years behind.





Office Of The Chief Of Staff, Army
General Officer Announcement

27 May 1999

**The Chief of Staff, Army announces the assignment of the following general officer:**

    <u>Colonel Malcom B. Westcott,</u> United States Army Reserve, for assignment as the Deputy Chief, Army Reserve, Washington, DC with a report date to be determined. Colonel Westcott is currently assigned as the Director of Force Programs, United States Army Reserve Command, Atlanta, Georgia.

## Herring, Stephen CPT (OCAR-PALD)

| | |
|---|---|
| **From:** | Herring, Stephen CPT (OCAR-PALD) |
| **Sent:** | Thursday, May 27, 1999 2:57 PM |
| **To:** | Schlff, Albert Mr (OCAR-PALD) |
| **Subject:** | DCAR Appointment News Release |

Al,
    The news release announcing COL Westcott's appointment as the Deputy Chief, Army Reserve has been marketed to the following media sources:

        - **Pentagon Press Corps** to include UPI, Washington Post, Rueters, Stars and Stripes, LA Times, Chicago Tribune.
        - The release was personally coordinated with the **New York Daily News** (countries largest circulation) and the **Associated Press**.
        - In addition, the release was forwarded to media with a special interest to COL Westcott - **Atlanta Journal**, Henry County **Daily Herold** (Parents), Falls River –        **Herold News** (home town).
        - Profesional Organizations to include **ARNEWS, AFIS, Soldiers, AUSA, USARC (distribution for USAR publications nation wide), Army Times** and the **ROA**
        - **Posted to the USAR Website and USARLINK.**
        - Alumni Associations of **Roger Williams University, Bridgewater State College** and **University of Massachusetts Dartmouth**

 **U.S. Army Reserve**
# NEWS RELEASE
**USAR Public Affairs**
**Arlington, VA  22202**

**FOR IMMEDIATE RELEASE**                                    No. 99-05-27

**For more information contact:**
**Mr. Al Schilf**
**(703) 601-0862/0859  Fax: (703) 601-0836**

## *Westcott Appointed as Deputy Chief, Army Reserve*

WASHINGTON, D.C., May 27--The Chief, Army Reserve announced today the appointment of Colonel Malcolm B. Westcott as Deputy Chief, Army Reserve.

Westcott, a native of Fall River, Mass., succeeds Brig. Gen. James R. Helmly who is being assigned as the Joint Task Force Commander for Operation Provide Refuge at the Fort Dix Army Reserve Installation, New Jersey.

Westcott has more than 30 years of service, having been commissioned in 1970 after completing Officer Candidate School at the Massachusetts Military Academy.

His service began in the Massachusetts Army National Guard, where he served in signal and field artillery units.  In 1976 he transferred to the Army Reserve.  Since then he has commanded at the company and field grade level and has extensive staff experience at every level in the Army.  His most recent assignment was as the Director, U.S. Army Reserve Force Programs, Office of the Chief, Army Reserve.

- more -

WESTCOTT/2-2-2

A graduate of Roger Williams College, RI, with a Bachelor's Degree in Biology/Sociology, Westcott also holds a Master of Education Degree from Bridgewater State College, Mass., and has a Master's Degree in Business Administration from Southeastern Massachusetts University.

Westcott's military education includes the Signal Officer Basic Course, the Army Medical Department Basic and Advanced courses, the U.S. Army Command and General Staff College, and the U.S. Army War College.

Westcott's military awards and decorations include five Meritorious Service Medals, the Joint Service Commendation Medal, the Army Commendation Medal, the Army Achievement Medal, the Expert Field Medical Badge, the Aircraft Crewman Badge, and the Army Staff Identification Badge.

- 30 -

DEPARTMENT OF THE ARMY
OFFICE OF THE VICE CHIEF OF STAFF
201 ARMY PENTAGON
WASHINGTON DC 20310-0201

REPLY TO
ATTENTION OF

0 7 FEB 2001

MEMORANDUM FOR THE INSPECTOR GENERAL

SUBJECT: Directive for Investigation (Case Number 01-018)

1. Investigate alleged improprieties by a senior official assigned to the United States Army Reserve.

2. Submit your report to me as soon as possible, but protect the rights of all persons involved and ensure the investigation is complete and accurate.

FOR OFFICIAL USE ONLY. DISSEMINATION IS PROHIBITED EXCEPT AS AUTHORIZED BY AR 20-1.

b7C

MEMORANDUM FOR Major General Joseph R. Inge, Deputy The Inspector General, 1700 Army Pentagon, Washington, DC, 20310-1700

SUBJECT: DAIG Investigation Regarding COL(P) Malcolm B. Westcott

1. I am COL Bruce Westcott's new defense counsel. In April of this year, COL Westcott's former defense counsel, LTC Robert Teetsel, sent a memorandum to your predecessor requesting his support to expedite COL Westcott's investigation. Neither COL Westcott nor LTC Teetsel received a reply. Rather, it seems only further delays have resulted. We are writing again in hopes that you can take some action to expedite this manifestly unfair and intractable process.

2. As I understand it, this matter began some time ago as a result of a complaint to the DoDIG concerning the conduct of then Chief of the Army Reserve, MG Max Baratz. Apparently, your office suspected General Baratz of criminal violations of Government ethics laws and referred the matter to CID for further investigation. Early on, COL Westcott was identified as a witness. He cooperated fully, submitting to full questioning by CID agents on 8 October 1999 and again on 21 October, resulting in hundreds of pages of transcribed testimony. Throughout the process, CID regarded COL Westcott as a witness, not a suspect. In July 2000, COL Westcott cooperated again, this time providing testimony to a Federal Grand Jury. Shortly thereafter, the Special Assistant United States Attorney, MAJ Mark Tellitocci, declined to prosecute MG Baratz for lack of evidence. Most importantly, and more germane to COL Westcott's case, was that CID refused to title COL Westcott for any suspected violations.

3. Last week, I was told that your office planned to initiate a preliminary inquiry into these same allegations that CID refused to title COL Westcott for. I was also told that you would be contacting COL Westcott shortly to inform him of the specific allegations against him (of which he has never received notification), and that your office would be conducting a PI. To date, he has not received any such communication.

4. As you know, COL Westcott serves as the Deputy Chief of the Army Reserve (DCAR), a Brigadier General billet and is promotable to Brigadier General. Confirmation of his promotion is on hold pending completion of the investigation by your office. COL Westcott is seemingly trapped in the black hole that is the DAIG process regarding General Officers. From our perspective, he is an innocent man, a witness, caught in the vortex between the allegations against MG (Ret.) Baratz and the DAIG's lumbering investigative process. Anything you can do to expedite the DAIG review of his case is

ANME-JAT
SUBJECT:  DAIG Investigation Regarding COL(P) Malcolm B. Westcott

sincerely appreciated.  Please contact COL Westcott or me, 301-677-9218, if there is
anything we can provide and anything we can do to expedite this matter.


SCOTT L. KILGORE
LTC, JA
Regional Defense Counsel

2

"FOR OFFICIAL USE ONLY - PRIVACY ACT DATA"

BOARD:  JUNE 1999 USAR GENERAL OFFICER PROMOTION SELECTION BOARD

RECOMMENDED LIST
PROMOTION TO BRIGADIER GENERAL IN THE UNITED STATES ARMY RESERVE
BY DATE OF RANK

| RANK | NAME | SSN | DOR |
|------|------|-----|-----|
| COL | MANEY, THOMAS P. | | 8/14/90 |
| COL | WALKER, GEORGE H., JR. | | 8/14/91 |
| COL | MANGUM, RONALD S. | | 12/13/91 |
| COL | PHILLIPS, COLLIS N. | | 1/27/92 |
| COL | ERCK, WAYNE M. | | 8/15/92 |
| COL | LEE, ROBERT G. F. | | 10/7/92 |
| COL | MASON, RANDALL L. | | 4/14/93 |
| COL | HILL, PAUL H. | | 8/14/93 |
| COL | KOBAYASHI, RODNEY M. | | 8/20/93 |
| COL | MOCK, PAUL E. | | 12/15/93 |
| COL | VANKLEECK, DAVID A. | | 4/14/94 |
| COL | WEDGE, WILLIAM K. | | 7/13/94 |
| COL | GONCZY, STEPHEN T. | | 8/19/94 |
| COL | HEINE ROBERT L. | | 12/4/94 |
| COL | SZAKMARY, THEODORE D. | | 12/16/94 |
| COL | BELL, ALAN D. | | 12/24/94 |
| COL | SYMANSKI, MICHAEL W. | | 8/15/95 |
| COL | CAMPBELL, KRISTINE K. | | 8/16/95 |
| COL | WESTCOTT, MALCOLM B. | | 6/13/96 |

ATTEST: _(signature)_          RECORDER: _(signature)_

016



**DEPARTMENT OF THE ARMY**
OFFICE OF THE CHIEF OF STAFF
200 ARMY PENTAGON
WASHINGTON DC 20310-0200

REPLY TO
ATTENTION OF

SEP 1 0 1999

DACS-GOM

MEMORANDUM THRU THE ~~ASSISTANT SECRETARY OF THE ARMY (M&RA)~~

VICE CHIEF OF STAFF, ARMY

~~CHIEF OF STAFF, ARMY~~

SEP 1 2 1999

~~ASSISTANT SECRETARY OF THE ARMY~~

SUBJECT: Results of the 29 June 1999 USAR General Officer Promotion Selection Boards
(GOPSB) – ACTION MEMORANDUM

1. Purpose. To obtain your approval of memoranda to the Secretary of Defense which
recommend that the President approve the report of the 29 June 1999, USAR General Officer
Promotion Selection Boards (GOPSB) report and nominate selected officers for promotion.

2. Discussion.

   a. The 29 June 1999 USAR GOPSB report is at BLUE TAB. The boards considered 31
officers for promotion to the grades of major general and brigadier general. The report contains
the names of the 29 officers recommended for promotion.

   b. The GOPSB also considered two officers for promotion to the grade of brigadier
general. ████████████ and Colonel ████████████ were not recommended
████████████████████████████████████████████████████████ qualified.

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

   c. The list of officers found qualified for promotion has been reviewed for matters of
impropriety by the Office of the General Counsel, the Office of The Judge Advocate General,
The Inspector General, the Central Clearance Facility, the Equal Opportunity Office and
Criminal Investigation Command (ORANGE TAB). There are items of adverse information at
RED TAB pertaining to the following officers:



024

DACS-GOM
SUBJECT:  Results of the 29 June 1999 USAR General Officer Promotion Selection Board --
ACTION MEMORANDUM



(VERIFIED TAB D)

c. Colonel (Promotable) Westcott, currently the Deputy Chief, Army Reserves is the subject of an ongoing DAIG preliminary inquiry into an allegation that he improperly directed the finding and the approval of an inappropriate task order (RED TAB C).

d. There are items of adverse information at the ORANGE TAB pertaining to COL███████, COL ███████, and COL ███.  The disposition of the information is indicated below:



████████████████████████████████████  The adverse report came in after the closure of the report. There was a conflict of interest; therefore, the information was not shown to the board which considered Colonel ████████.

████████████████████████████████████████  The information was not substantiated and, therefore, was not shown to the officer nor shown to the Board.

e.  The ongoing investigations pertaining to ████████████████████ Colonel ███ and Colonel Westcott are not expected to conclude in the short term.  Rather than delay the

2

DACS-GOM
SUBJECT:  Results of the 29 June 1999 USAR General Officer Promotion Selection Board --
ACTION MEMORANDUM

nomination list, I recommend you withhold the promotion board report and recommendations
specifically pertaining to those officers pending resolution of the investigations.

f.  The Boards' equal opportunity promotion statistics are at CLEAR TAB A and the
Memorandum of Instruction to the Board(s) is at CLEAR TAB B.

g.  At the YELLOW TAB is the OTJAG and OGC review of ▉▉▉▉▉▉▉ with this action.

4.  Recommendation.

a.  That you withhold the promotion board reports and recommendations pertaining to ▉▉
▉▉▉▉▉ COL ▉▉▉ and COL Westcott by initialing on the next page.

b.  That you initial the board report at BLUE TAB.

c.  That you sign the memorandum at the BLUE TAB to the SecDef recommending the
President nominate for promotion the 26 officers named therein.

Very respectfully,

JAMES N. DELOTTINVILLE
Lieutenant Colonel, GS
Chief, General Officer
Management Office

Encls
as

(SecArmy decision line next page)

3

026

DACS-GOM
SUBJECT:  Results of the 29 June 1999 USAR General Officer Promotion Selection Board
(GOPSB) -- ACTION MEMORANDUM

ASA (M&RA) comments/concur:

VCSA comments/concur:

CSA comments/concur:

SecArmy decision:                                                    SEP 2 2 1999

   Withhold the names of ██████████ COL ███ and COL Westcott _____

   Forward the results and the reports pertaining to 26 officers _____

   Other _____

   CSA see me_____

4

027

**DEPUTY SECRETARY OF DEFENSE**

1010 DEFENSE PENTAGON
WASHINGTON, DC 20301-1010



OCT  7 1999

MEMORANDUM FOR SECRETARY OF THE ARMY

SUBJECT: General Officer Nomination

  I have withheld the names of ███████████████████████ Colonel ██████ ██ and Colonel Malcolm B. Westcott from the June ██ 1999 ██████ Reserve General Officer Promotion Selection Board nomination scroll. I have withheld the names of these three officers based on your statement that allegations are pending concerning ████████ ████████ Colonel ████ and Colonel Westcott.

  This action will permit the other officers on the nomination scroll to proceed forward toward Presidential nomination to the Senate. The basis for this action is Department of Defense Instruction 1320.4, which prescribes procedures for processing nominations through the Department of Defense to the President. Please advise me of the results of the investigations and your recommended actions on the nominations of ███████████████████ Colonel ███, and Colonel Westcott.

John J. Hamre

038





**DEPARTMENT OF THE ARMY**
OFFICE OF THE CHIEF OF STAFF
200 ARMY PENTAGON
WASHINGTON DC 20310-0200

JUL 1 5 2002

REPLY TO
ATTENTION OF

General Officer
   Management Office

Colonel Malcolm B. Westcott
Deputy Chief, Army Reserve
2400 Army Pentagon
Washington, DC 20310-2400

Dear Colonel Westcott:

   This letter is to advise you that you are being referred to a Promotion Review Board (PRB) to recommend your retention on or removal from the June 1999 Army Reserve General Officer Promotion Selection List based on a General Officer Memorandum of Reprimand (**TAB A**).

   The board will be provided your Official Military Personnel File and your resume with photo (**TAB B**). As outlined by paragraph 8-6, AR 600-8-29, you may provide comments on any information that will be seen by the board. If you elect to respond, your letter should be addressed to the Secretary of the Army. The General Officer Management Office must receive any comments not later than 30 July 2002.

   If you have any questions, please call me at (703) 697-7994.

                              Sincerely,

                              James N. deLottinville
                              Colonel, US Army
                              Chief, General Officer
                                 Management Office

Enclosures

Printed on Recycled Paper